1   PHILIP A. OVERCASH #022964
    KUTAK ROCK LLP
2   Suite 300
    8601 North Scottsdale Road
3   Scottsdale, AZ  85253-2742
    (480) 429-5000
4   Facsimile: (480) 429-5001
    Philip.Overcash@kutakrock.com
5
    *Attorneys for Defendants Zurich American*
6   *Insurance Company and Zurich American*
    *Insurance Company of Illinois*
7

8            **UNITED STATES DISTRICT COURT**

9          **IN AND FOR THE DISTRICT OF ARIZONA**

10

11  MARTHA TAYLOR on behalf of the          Case Number:
    ESTATE OF STEVEN THOMSON,
12  THOMAS THOMSON, and KAYCI
    THOMSON,
13                                           **INDEX OF EXHIBITS TO**
                Plaintiffs,                  **NOTICE OF REMOVAL**
14
    v.
15
    ZURICH AMERICAN INSURANCE
16  COMPANY, and ZURICH AMERICAN
    INSURANCE COMPANY OF ILLINOIS,
17
                Defendants.
18

19  Exhibit A:   Copy of Complaint, Summons, and Certificate of Compulsory Arbitration
20               served on Defendant Zurich American Insurance Company.

21  Exhibit B:   Affidavits of Service filed with Superior Court of Mohave County.

22  Exhibit C:   Exhibits to Complaint, which were *not* served on Defendants.
23

24

25

26

27

28

4813-5064-9098.1                                                    87111-297

# EXHIBIT A

# EXHIBIT A

FILED

BY:

2011 MAY 11  PM 2: 14

VIRGINIA TINNELL
SUPERIOR COURT CLERK

1
2
Edward P. Moriarity (028066)
Bradley L. Booke (010559)
3
Minot C. Maser (028420)
MORIARITY, BADARUDDIN & BOOKE
4
124 West Pine Street
Missoula, MT 59802
5
(406) 728-6868
(406) 728-7722 Fax
6
e-mail:  ed.moriarity@mbblawfirm.com
7
          brad.booke@mbblawfirm.com
          minot.maser@mbblawfirm.com
8
Douglas D. Sutherland (014275)
9
THE SUTHERLAND LAW FIRM
722 East Beale Street
10
Kingman, AZ  86401
(928) 753-6000
11
(928) 753-2200
12
e-mail: sutherlandlaw@npgcable.com
13
*Attorneys for Plaintiffs*
14

15
16
IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR MOHAVE COUNTY
17

| | |
|---|---|
| 18 MARTHA TAYLOR, on behalf of the ESTATE of STEVEN THOMSON; THOMAS THOMSON, an individual; and KAYCI THOMSON, an individual | Case No. CV2011 00772 |
| 19 | |
| 20 | |
| 21 Plaintiffs, | |
| 22 vs. | COMPLAINT |
| 23 ZURICH AMERICAN INSURANCE COMPANY; ZURICH AMERICAN INSURANCE COMPANY OF ILLINIOS; JOHN DOES I-V; ABC CORPORATIONS XI-XV, and XYZ PARTNERSHIPS XVI-XXII, | |
| 24 | |
| 25 | |
| 26 | |
| 27 Defendants. | |
| 28 | |

-1-

Plaintiff, through counsel, for their causes of action, allege as follows:

## PARTIES, JURISDICTION AND VENUE

1.     Plaintiff, Martha Taylor, on behalf of the Estate of Steven Thomson, is an individual who resides in Lake Havasu City, Mohave County, Arizona, and has been appointed the Personal Representative of decedent Steven Thomson's estate.

2.     Plaintiff, Thomas Thomson, is the son of decedent Steven Thomson and resides in Lake Havasu City, Arizona.

3.     Plaintiff, Kayci Thomson, is the daughter of decedent Steven Thomson and resides in Oxnard, California.

4.     Defendants Zurich American Insurance Company domiciled in New York and Zurich American Insurance Company of Illinois, domiciled in Illinois (hereinafter collectively "Zurich") are licensed and authorized by the Arizona Department of Insurance to sell insurance products in the State of Arizona.

5.     Defendant Zurich caused damages that manifested in Mohave County, Arizona. Venue and jurisdiction are proper in Mohave County, Arizona.

6.     The fictitious Defendants, JOHN DOES I-V, ABC CORPORATIONS XI-XV and XYZ PARTNERSHIPS XVI-XXII, are believed to be individuals and/or entities who are who have caused or contributed to events that underlie this lawsuit.   The true names of such defendants are unknown at this time and Plaintiffs will, upon ascertaining the true names of said defendants, seek leave of Court to amend this Complaint.

## FACTS COMMON TO ALL CAUSES OF ACTION

7.     Plaintiffs incorporate herein by reference as though fully set forth herein all allegations contained in the previous paragraphs.

8.     This Complaint is brought to declare and enforce the rights of beneficiaries under an insurance policy issued by Defendant Zurich.

9.     Steven Thomson resided in Lake Havasu City, Mohave County, Arizona.

10.     On or about January 9, 2010, Steven was participating in a Best of the Desert motorcycle event held near Parker, Arizona, called the "Silver State 300."

11.     The Best of the Desert is a series of off-road motorcycle events that attract a broad range of participants.  At the January 9, 2010, event in which Steven participated, the riders ranged in age from 12 to 92.

12.     Steven was participating as an amateur with his son, Thomas Thomson.

13.     About an hour into the event, while riding a part of the course that had previously been traveled by hundreds of riders, Steven lost control of his motorcycle, and, despite wearing a helmet, he suffered a fatal head injury.

14.     At the time of his death, Steven was employed by YRC Worldwide, Inc.

15.     Through YRC, Steven had purchased an Accidental Death Benefit insurance policy issued by Defendant Zurich, Policy Number GTU 0030578.  (*See* Exhibit 1)

16.     Steven's decision to purchase an Accidental Death Benefit was voluntary, as he and all other employees had the option to refuse the Accidental Death Benefit policy.

17.     On information and belief, Steven paid for his Accidental Death Benefit through payroll deductions collected by his employer.

18.     On information and belief, Steven's employer YRC did not contribute to the premiums paid for Steven's Accidental Death Benefit policy.

19.     Thomas Thomson and Kayci Thomson, Steven's children, are designated beneficiaries of the Accidental Death Benefit policy.

20.     Steven elected $300,000 in Accidental Death Benefit, based on Zurich's representations, and with the understanding, that accidental death benefits would be paid in the event Steven was accidentally killed in activities in which he commonly participated.

21.     Steven relied upon Zurich's representations in electing $300,000 in coverage, and in paying the premiums for that coverage.

22.     Following Steven's accidental death, his son and beneficiary, Thomas Thomson, wrote to Defendant Zurich, requesting payment of the accidental death benefit.

23.     On April 23, 2010, Zurich sent Thomas a claim denial letter.  Zurich denied payment based on an identified section of the Policy that excluded coverage for air travel and aircraft hazard limitations. (*See* Exhibit 2)

-3-

24.    The Exclusion cited by the defendant was and is clearly inapplicable, was relied upon in bad faith, was asserted for the purpose of delay, and was a part of a pattern to avoid payments of benefits.

25.    On June 10, 2010, Thomas, by then represented by counsel, wrote to Zurich appealing the denial.  Thomas's counsel advised Defendant Zurich of its misinterpretation and misapplication of the air travel exclusion to a motorcycle accident. (*See* Exhibit 3)

26.    Three and a half months—111 days later—on September 28, 2010, Zurich responded with yet another denial, but withdrawing its original denial, and asserting a new exclusion as a basis for denial, an "extra-hazardous activity" exclusion. (*See* Exhibit 4)

27.    Nowhere in Zurich's insurance contract is the term "extra-hazardous activity" defined.

28.    In its second denial letter, Zurich cited two inapplicable and non-binding Wisconsin state and federal court opinions that adjudicated whether exculpatory agreements, one signed by a professional motorcycle racer and the other a race crew staff, were enforceable. These unrelated opinions were submitted in an attempt to assert that Steven's motorcycle use constituted an "extra-hazardous activity."

29.    Neither case cited in Zurich's second denial letter used the terms "extra-hazardous" or "ultra-hazardous;" neither provided any definition of these terms; and neither related these terms to motorcycle riding.

30.    Instead, the cases cited are "assumption of the risk" cases that only determined whether event participants accepted the risks of their respective activities and consequently whether corresponding exculpatory agreements were valid.

31.    On November 29, 2010, Thomas' counsel faxed and simultaneously mailed yet another appeal letter to Zurich, pursuant to the terms of the insurance contact. (*See* Exhibit 5)

32.    This second appeal identified and addressed the legal defects in Zurich's reliance upon Wisconsin law and again demanded that Zurich pay the full benefits due to the beneficiaries named by Steven Thomson.

33.    On January 5, 2011, Thomas Thomson's counsel received an email from a legal

representative of Zurich stating that Zurich had sixty days to respond to Thomson's second appeal letter. (*See* Exhibit 6)

34.    Sixty days from November 29, 2010, fell on January 28, 2011. Following this date, on February 1, 2011, Thomas Thomson's counsel emailed Zurich's legal representative inquiring about a determination on the second appeal. (*See* Exhibit 7)

35.    On March 2, 2011, Plaintiffs finally received correspondence regarding the second appeal, but with, yet again, a new and different alleged basis for denial of payments: that Mr. Thomson's death was not an accident (*See* Exhibit 8).

36.    Zurich's denial of benefits due the beneficiaries of the Accidental Death Benefit designated by Steven Thomas was and is arbitrary and capricious, was and is without a legal and/or factual basis, was and is made in bad faith, as a part of a pattern to avoid payment of benefits that are due and payable.

37.    Zurich's position as the administrator of the Accidental Death Benefit with benefit eligibility powers creates a conflict of interest, in that there is a financial incentive for Zurich to withhold disbursements from funds pooled via premium payments for the Accidental Death Benefit.

## FIRST CLAIM FOR RELIEF
## BAD FAITH INSURANCE PRACTICE

38.    Plaintiffs repeat and re-allege the allegations contained in all paragraphs above, the same as if set forth herein in full.

39.    By virtue of being licensed to issue insurance in the state of Arizona, Defendants Zurich, and Defendant ABC Corporations, Doe individuals, and XYZ Partnerships, are required by Arizona Revised Statutes § 20-441, et seq., to act fairly and promptly in investigating and evaluating insurance claims and to promptly pay all claims when liability for such claims becomes clear.

40.    These Arizona statutes were enacted to protect persons such as Plaintiffs, to assure that citizens would be fairly treated by insurance companies, and to prevent insurance companies, such as Defendants, from using their superior economic size, knowledge of the law,

and procedural loopholes to take unfair advantage of citizens.

41.     By their conduct as described above, in failing to promptly and fairly investigate, and reasonably evaluate the Plaintiffs' entitlement to benefits under the Policy, and in failing and refusing to pay Plaintiffs' Accidental Death Benefit, although Defendant's liability for that claim is clear, Defendants have violated their statutory responsibilities.

42.     Defendants' conduct, as described above, constitutes unfair and bad faith insurance practices.

43.     As the direct and proximate result of Defendants' failure and refusal to pay Plaintiffs' claim, Plaintiffs have suffered damages including, without limitation, the following:

a.      The Plaintiffs have been forced to endure emotional pain and suffering caused by Defendants' bad faith attempts to diminish and devalue the extent of their loss;

b.      The Plaintiffs have not been compensated for the general and special damages to which they are entitled;

c.      The Plaintiffs have lost the use and benefit of insurance proceeds to which they were and are entitled;

d.      The Plaintiffs have lost the earnings that would have been realized from the timely payment of insurance proceeds to which they were and are entitled;

e.      The Plaintiffs have been required to hire counsel and to incur attorney's fees in order to prosecute this action, which will substantially reduce the benefit of the insurance proceeds to which they were and are entitled; and

f.      The Plaintiffs have been required and will be forced to incur significant litigation costs in order to prosecute this action, which will substantially reduce the benefit of the insurance proceeds to which they were and are entitled.

## SECOND CLAIM FOR RELIEF
## BREACH OF CONTRACT

44.     Plaintiffs repeat and re-allege the allegations of all paragraphs above, the same as if set forth herein in full.

45.     Defendant Zurich's Accidental Death Benefit is part of an insurance contract to

which Defendants are a party.

46.     Steven Thomson fully and timely performed all of his obligations under the insurance contract, causing Steven Thomson to be insured under the contract and entitling Steven's named beneficiaries, the Plaintiffs, to the accidental death benefits as provided by the contract.

47.     By the acts and omissions as described above, Defendants have failed to perform as required by the insurance contract and have defaulted under and breached the contract.

48.     As the direct and foreseeable result of Defendants' breach of the insurance contract, Plaintiffs have been damaged in several ways including, without limitation, the following:

a.     The Plaintiffs have been forced to endure emotional pain and suffering caused by Defendants' bad faith attempts to diminish and devalue the extent of their loss;

b.     The Plaintiffs have not been compensated for the general and special damages to which they are entitled;

c.     The Plaintiffs have lost the use and benefit of insurance proceeds to which they were and are entitled;

d.     The Plaintiffs have lost the earnings that would have been realized from the timely payment of insurance proceeds to which they were and are entitled;

e.     The Plaintiffs have been required to hire counsel and to incur attorney's fees in order to prosecute this action, which will substantially reduce the benefit of the insurance proceeds to which they were and are entitled; and

f.     The Plaintiffs have been required and will be forced to incur significant litigation costs in order to prosecute this action, which will substantially reduce the benefit of the insurance proceeds to which they were and are entitled.

### THIRD CLAIM FOR RELIEF
### NEGLIGENT MISREPRESENTATION

49.     Plaintiffs repeat and re-allege the allegations of all paragraphs above, the same as if set forth herein in full.

-7-

50.     At all times relevant hereto, Defendants owed a duty to Steven Thomson to make fair, truthful, accurate and complete representations about the nature and extent of coverage provided and excluded by the insurance policy they sold to Steven Thomson.

51.     Defendants made representations to Steven Thomas related to material facts regarding coverage afforded by the Accidental Death Benefit.

52.     The representations and omissions were false or so substantially misleading as to be false, when the representations were made.

53.     Defendants made the misrepresentations and omissions for their own financial gain.

54.     Defendant made false and misleading representations and/or omissions concerning material facts, expecting and knowing that Steven Thomson would rely on them.

55.     Defendant made false and misleading representations and/or omissions for the purpose of inducing Steven Thomson to rely upon them in making a purchase decision, and Steven Thomson did, in fact, rely upon them.

56.     Steven Thomas was unaware of the falsity and misleading nature of Defendant's representations and/or omissions concerning material facts.

57.     As a direct and proximate result of these false and misleading representations and/or omissions, the beneficiaries of Steven Thomson's Accidental Death Benefit, the Plaintiffs, have been injured in an amount to be proven at trial.

### FOURTH CLAIM FOR RELIEF
### UNJUST ENRICHMENT

58.     Plaintiffs repeat and re-allege the allegations of all paragraphs above, the same as if set forth herein in full.

59.     Defendants are unjustly enriched by having accepted premium payments for Steven Thomson's Accidental Death Benefit, and having earned income from the use of those premiums, both of which conferred a substantial benefit on Defendants without paying benefits as required by contract and law.

60.     There is no reason why Defendants should be rewarded and be unjustly enriched

for their unconscionable, unethical, immoral, and unlawful conduct, and in taking advantage of Steven Thomson and the Plaintiffs.

61.    As a result of Defendants' conduct, Plaintiffs have suffered damages in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF

## IMMEDIATE DECLARATORY RELIEF

62.    Plaintiffs repeat and re-allege the allegations of all paragraphs above, the same as if set forth herein in full.

63.    The Plaintiffs are the intended beneficiaries of the Accidental Death Benefit purchased from Defendants.

64.    Under A.R.S. §12-1831, et seq., as intended beneficiaries of the insurance contract, Plaintiffs are entitled to have a court of record declare their rights, status and legal relations with respect to the Accidental Death Benefit of $300,000.

65.    All conditions precedent to Defendants' duty to pay under the Accidental Death Benefit have been satisfied, Defendants have a present legal duty to pay the Accidental Death Benefit of $300,000 to the insured Plaintiffs, and this matter is ripe for a determination as to their right to receive death benefits.

66.    The Plaintiffs are entitled to declaratory judgment to settle and afford relief from the uncertainty with respect to their rights, status, and other legal relations as delineated in the Accidental Death Benefit purchased from the Defendant.

## SIXTH CLAIM FOR RELIEF

## PUNITIVE AND EXEMPLARY DAMAGES

67.    Plaintiffs repeat and re-allege the allegations of all paragraphs above, the same as if set forth herein in full.

68.    Defendants' acts and omissions, as described above, were motivated and conducted with actual malice. Defendants had knowledge of facts, or intentionally disregarded facts, that created a high probability of injury to the Plaintiffs and deliberately proceeded to act in conscious or intentional disregard of the substantial risk of significant harm to the Plaintiffs

and/or deliberately proceeded to act with indifference to the high probability of injury to the Plaintiffs by denying Plaintiffs' right to payment under the Accidental Death Benefit.

69.     Defendants committed other acts that demonstrate actual malice.

70.     Defendants' acts proximately caused injury and damage to the Plaintiffs.

71.     The acts and omissions of Defendants are such that exemplary damages should be awarded to make an example of these Defendants, and to deter these Defendants and others from future similar misconduct.

WHEREFORE, Plaintiffs respectfully pray that the Court enter an order:

A.     Declaring that the Accidental Death Benefit sold by Defendants provides coverage for the Plaintiffs;

B.     Declaring that Defendants has a legal duty and obligation to pay the $300,000 limits of the Accidental Death Benefit to the Plaintiffs;

C.     Awarding Plaintiffs such general and special damages to which they prove themselves entitled at the trial of this case;

D.     Awarding Plaintiffs their attorney's fees and costs incurred in prosecuting this action;

E.     Awarding Plaintiffs interest pursuant to A.R.S. 20-462;

F.     Awarding Plaintiffs punitive and exemplary damages as provided by law; and

G.     For such other and further relief as the Court deems proper under the circumstances.

Dated this 4th day of May 2011.

Minot C. Maser (028420)
Moriarity Badaruddin & Booke
124 West Pine Street
Missoula, MT 59802
(406) 728-6868
(406) 728-7722

Douglas D. Sutherland (014275)
THE SUTHERLAND LAW FIRM
722 East Beale Street

-10-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Kingman, AZ  86401
(928) 753-6000
(928) 753-2200
Attorneys for Plaintiffs

STATE OF ARIZONA
DEPT. OF INSURANCE

JUN 10 2011

TIME 8:55 am
SERVICE OF PROCESS

1   Edward P. Moriarity (028066)
    Bradley L. Booke (010559)
2   Minot C. Maser (028420)
3   MORIARITY, BADARUDDIN & BOOKE
    124 West Pine Street
4   Missoula, MT 59802
    (406) 728-6868
5   (406) 728-7722 Fax
6   e-mail: ed.moriarity@mbblawfirm.com
            brad.booke@mbblawfirm.com
7           minot.maser@mbblawfirm.com
8   Douglas D. Sutherland (014275)
    THE SUTHERLAND LAW FIRM
9   722 East Beale Street
10   Kingman, AZ 86401
    (928) 753-6000
11   (928) 753-2200
    e-mail: sutherlandlaw@npgcable.com
12
13   *Attorneys for Plaintiffs*

14

15           IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
16                   IN AND FOR MOHAVE COUNTY

17

18   MARTHA TAYLOR, on behalf of the
    ESTATE of STEVEN THOMSON; THOMAS
19   THOMSON, an individual; and KAYCI
    THOMSON, an individual,
20

21           Plaintiffs,

22         vs.

23   ZURICH   AMERICAN   INSURANCE
24   COMPANY;   ZURICH   AMERICAN
    INSURANCE COMPANY OF ILLINIOS;
25   JOHN DOES I-V; ABC CORPORATIONS
    XI-XV, and XYZ PARTNERSHIPS XVI-
26   XXII,
27           Defendants.
28

Case No.: CV201100772

Dept. No. _____

**SUMMONS**

-1-

**NOTICE!  YOU HAVE BEEN SUED, THE COURT MAY DECIDE AGAINST YOU WITHOUT YOUR BEING HEARD UNLESS YOU RESPOND WITHIN 20 DAYS. READ THE INOFRMATION BELOW.**

**To the Defendant:   ZURICH AMERICAN INSURANCE COMPANY**

A civil Complaint has been filed by the above named Plaintiffs against you for the relief set forth in the Complaint.

YOU ARE HEREBY SUMMONED and required to appear and defend, within the time applicable, in this action in this Court, if served within Arizona, you shall appear and defend within 20 days after the service of the Summons, Complaint, and Plaintiff's Certificate re Compulsory Arbitration upon you, exclusive of the day of service.  If served out of the State of Arizona whether by direct service, by registered or certified mail, or by publication – you shall appear and defend within 30 days after the service of the Summons, Complaint, Plaintiffs Certificate re: Compulsory Arbitration and Jury Demand upon you is complete, exclusive of the day of service. Where process is served upon the Arizona Director Insurance as an insurer's attorney to receive service of legal process against it in this state, the insurer shall not be required to appear, answer or plead until expiration of 40 days after date of such service upon the Director. Service by registered certified mail outside the State of Arizona is complete 30 days after the date of receipt by the party being served. Service by publication is complete 30 days after the date of first publication. Direct service is complete when made. Service upon the Arizona Motor Vehicle Superintendent is complete 30 days after filing the Affidavit of Compliance and return receipt or Officer's Return. Ariz. R. CP 4; A.R.S §§ 20-222, 28-502, 28-503.

Copies of the pleadings filed herein may be obtained by contacting the Clerk of the Mohave County Superior Court, 401 E. Spring Street, Kingman, Arizona 86402.

YOU ARE HEREBY NOTIFIED that in case of your failure to appear and defend within the time applicable, judgment by default may be rendered against you for the relief demanded in the Complaint.  Requests for reasonable accommodation for persons with disabilities must be made to the division assigned to the case by parties at least three (3) days in advance of the

-2-

1   scheduled Court proceeding.

2        YOU ARE CAUTIONED that in order to appear and defend: you must file an Answer or

3   proper response in writing with the Clerk of this Court, accompanied by the necessary filing fee,

4   within the time required, and you are required to serve a copy of any Answer or response upon

5   the Plaintiff's attorney.  RCP 10(D); A.R.S. §12-311; RCP 5.

6        Dated this _11th_ day of May 2011.

8        Virlynn Tinnell
         Clerk of Superior Court

10       By: _____
             Deputy Clerk

-3-

FILED

BY:_____

2011 MAY 11  PM 2:16

_____ FINNEY
SUPERIOR COURT CLERK

1   Edward P. Moriarity (028066)
2   Bradley L. Booke (010559)
    Minot C. Maser (028420)
3   MORIARITY, BADARUDDIN & BOOKE
    124 West Pine Street
4   Missoula, MT 59802
    (406) 728-6868
5   (406) 728-7722 Fax
6   e-mail:  ed.moriarity@mbblawfirm.com
              brad.booke@mbblawfirm.com
7             minot.maser@mbblawfirm.com

8   Douglas D. Sutherland (014275)
9   THE SUTHERLAND LAW FIRM
    722 East Beale Street
10  Kingman, AZ  86401
    (928) 753-6000
11  (928) 753-2200
12  e-mail:  sutherlandlaw@npgcable.com

13  *Attorneys for Plaintiffs*

14

15          IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
16              IN AND FOR MOHAVE COUNTY

17

18  MARTHA TAYLOR, on behalf of the
    ESTATE of STEVEN THOMSON; THOMAS
19  THOMSON, an individual; and KAYCI
    THOMSON, an individual,
20

21          Plaintiffs,

22          vs.

23  ZURICH AMERICAN INSURANCE
24  COMPANY; ZURICH AMERICAN
    INSURANCE COMPANY OF ILLINIOS;
25  JOHN DOES I-V; ABC CORPORATIONS
    XI-XV, and XYZ PARTNERSHIPS XVI-
26  XXII,
27
28          Defendants.

Case No. CV2011 00772

PLAINTIFFS' CERTIFICATE RE:
COMPULSORY ARBITRATION

-1-

The undersigned certifies that the largest award sought by the Complainant, including punitive damages, but excluding interest, attorney's fees and costs, exceeds the limits set by the Local Rules for compulsory arbitration.

Therefore, this matter is not subject to Court-annexed arbitration.

Dated this 4th day of May 2011.

Minot C. Maser (028420)
Moriarity Badaruddin & Booke
124 West Pine Street
Missoula, MT 59802
(406) 728-6868
(406) 728-7722

Douglas D. Sutherland (014275)
THE SUTHERLAND LAW FIRM
722 East Beale Street
Kingman, AZ 86401
(928) 753-6000
(928) 753-2200
Attorneys for Plaintiffs

-2-





**ARIZONA DEPARTMENT OF INSURANCE**
2910 North 44th Street, Suite 210
Phoenix, Arizona 85018-7269

7010 0780 0000 5681 9828

ZURICH AMERICAN INS CO
CORPORATION SVS
2338 WEST ROYAL PALM RD SUITE J
PHOENIX AZ 85021
CV20110O772

# EXHIBIT B

# EXHIBIT B



FILED
BY
2011 JUN 20 PM 2:08
MICHAEL K. JEANES
SUPERIOR COURT CLERK

E-Z MESSENGER
1209 E. Washington Street
Phoenix, AZ 85034
(602) 258-8081 FAX: (602) 258-8864

IN THE ARIZONA SUPERIOR COURT
STATE OF ARIZONA COUNTY OF MOHAVE

MARTHA TAYLOR
        VS
ZURICH AMERICAN INSURANCE COMPANY

CASE NO. CV201100772

STATE OF ARIZONA    )
MARICOPA COUNTY     )        AFFIDAVIT OF SERVICE

THE AFFIANT, being sworn, states: That I am a private process server registered in MARICOPA COUNTY and an Officer of the Court.  On 06/09/11 I received the SUMMONS; COMPLAINT; PLAINTIFFS' CERTIFICATE RE: COMPULSORY ARBITRATION

from MORIARITY, BADURUDDIN & BOOKE, LLC and by in each instance I personally served a copy of each document listed above upon:
ZURICH AMERICAN INSURANCE COMPANY OF ILLINOIS, BY SERVICE UPON THE ARIZONA DEPARTMENT OF INSURANCE, OFFICE OF THE DIRECTOR on 06/10/11 at 8:55 am at 2910 N. 44TH STREET #210 PHOENIX, AZ 85018 MARICOPA COUNTY in the manner shown below:

by leaving true copy(ies) of the above documents with SCOTT GREENBERG, ADMINISTRATIVE ASSISTANT, STATED AUTHORIZED TO ACCEPT. TENDERED FEES IN THE AMOUNT OF $ 30.00.

Description: WHITE, Male, Approx. 40 yrs. of age, 6' 0" tall, Weighing 150lbs., BLACK Hair,

DON A. FOUTZ, ACPS                        Affiant
Sworn to before me the  Jun 13, 2011

Denise M. Corral                          Notary

My Commission expires:  05/31/2014

SERVICE OF PROCESS $   32.00
SERVICE CHARGE     $    8.00
AFFIDAVIT PREP/NOTARY $  10.00
         TOTAL $   50.00

2095620 12488
ORIGINAL
AX022095620




OFFICIAL SEAL
DENISE M. CORRAL
NOTARY PUBLIC-ARIZONA
MARICOPA COUNTY
My Comm. Exp. May 31, 2014

S8015CV201100772

FILED

2011 JUN 20 PM 2: 03

MICHAEL K. JEANNELL
SUPERIOR COURT CLERK

E-Z MESSENGER
1209 E. Washington Street
Phoenix, AZ 85034
(602) 258-8081 FAX: (602) 258-8864

IN THE ARIZONA SUPERIOR COURT
STATE OF ARIZONA COUNTY OF MOHAVE

MARTHA TAYLOR                                    CASE NO. CV201100772
             vs
ZURICH AMERICAN INSURANCE COMPANY

STATE OF ARIZONA        )                        AFFIDAVIT OF SERVICE
MARICOPA COUNTY         )
THE AFFIANT, being sworn, states: That I am a private process server registered in
MARICOPA COUNTY and an Officer of the Court.  On 06/09/11 I received the SUMMONS;
COMPLAINT; PLAINTIFFS' CERTIFICATE RE: COMPULSORY ARBITRATION

from MORIARITY, BADURUDDIN & BOOKE, LLC and by in each instance I personally served
a copy of each document listed above upon:
ZURICH AMERICAN INSURANCE COMPANY, BY SERVICE UPON THE ARIZONA DEPARTMENT OF
INSURANCE, OFFICE OF THE DIRECTOR on 06/10/11 at 8:55 am at 2910 N. 44TH STREET
#210 PHOENIX, AZ 85018 MARICOPA COUNTY in the manner shown below:

by leaving true copy(ies) of the above documents with SCOTT GREENBERG,
ADMINISTRATIVE ASSISTANT, STATED AUTHORIZED TO ACCEPT. TENDERED FEES IN THE AMOUNT
OF $ 30.00.

Description: WHITE, Male, Approx. 40 yrs. of age, 6' 0" tall, Weighing 150lbs.,
BLACK Hair,



DON A. FOUTZ, ACFE                               Affiant
Sworn to before me the   Jun 14, 2011

Denise M. Corral                                 Notary

My Commission expires:   05/31/2014

| | | | |
|---|---|---|---|
| SERVICE OF PROCESS | $ | 32.00 |
| MILES | 8 | $ | 19.20 |
| SERVICE CHARGE | $ | 8.00 |
| AFFIDAVIT PREP/NOTARY | $ | 10.00 |
| TOTAL | $ | 69.20 |

AX022095626

2095626 12488
ORIGINAL



OFFICIAL SEAL
DENISE M. CORRAL
NOTARY PUBLIC-ARIZONA
MARICOPA COUNTY
My Comm. Exp. May 31, 2014



S801SCV201100772

# EXHIBIT C

# EXHIBIT C

# EXHIBIT
## "1"



**ZURICH**

May 7, 2010

Thomas Thomson
2517 Baranca Drive
Lake Havasu City, AZ 86493

Claim No:     742-0011188
Claimant:     Steven Thomson
Insured:      YRC Worldwide, Inc.
Policy No.:   GTU 0030578
D/L:          1/9/10

Dear Mr. Thomson:

We are responding on behalf of Zurich American Insurance Company.

Enclosed please find copy of policy requested be sent to you by Martha Taylor. Since Ms. Taylor was not the named beneficiary on the policy, the policy could not be released directly to her without your authorization,

Should you have questions or require additional documents, please do not hesitate to contact me at (631) 845-2241.

Very truly yours,

Karen Doyle
Senior Claims Specialist
A&H Special Risk Claims
Specialties Division

Zurich North America
Specialties
Group Accident, A&H Claims
58 Srnth Service Rd Melville, NY 11747-2342
P.O. Box 9102 Plainview, NY 11803-9002
Telephone (631) 845-2200 Toll Free (866) 841-4771
AD&D Fax (631) 845-2523

05/17/2010 09:52 FAX  9288557229          FPS MEDICAL CENTER                     ☒003/024

## Group Accident Policy



**ZURICH** ®

ZURICH AMERICAN INSURANCE COMPANY
Schaumburg, Illinois

In return for the payment of premium expressed in the Schedule, We agree to pay the benefits of this Group Accident Policy to the persons insured hereunder, subject to the terms and conditions, which follow. We have issued the Group Accident Policy to the Policyholder. The Group Accident Policy is executed as of the Policy date which is its date of issue, and from which anniversary dates are measured. The Group Accident Policy is delivered in, and subject to the laws of the Contract Situs in which it is issued.

**THIS GROUP ACCIDENT INSURANCE POLICY PROVIDES ACCIDENT COVERAGE ONLY**
**THIS POLICY DOES NOT PROVIDE COVERAGE FOR SICKNESS**

**POLICYHOLDER:**   YRC Worldwide Inc.
10990 Roe Avenue, Mailstop A525
Overland Park, KS 66211-1213

**POLICY NUMBER:**  GTU 0030578

**POLICY DATE:**   January 1, 2009 to Continuous
(All insurance begins and ends at 12:01 a.m. at Policyholder's Address)

As of January 1, 2009, this Policy replaces the prior Policy effective January 1, 1997, bearing the same Policy number.

**CONTRACT SITUS:**  Kansas

The following pages, including any riders, endorsements, schedule pages, Insured enrollment forms, applications or amendments, are a part of this Group Accident Policy. We and the Policyholder have agreed to all the terms of this Group Accident Policy.

This is a legal contract between the Policyholder and Us.
**READ THE GROUP ACCIDENT POLICY CAREFULLY**

In Witness Whereof, We have caused this Policy to be executed and attested, and, if required by state law, this Policy will not be valid unless countersigned by Our authorized representative.

*Nancy D. Mueller*

Nancy D. Mueller
President
Zurich American Insurance Company

*Dennis F. Kerrigan*

Dennis F. Kerrigan, Jr.
Corporate Secretary
Zurich American Insurance Company

**NON-PARTICIPATING**

U-VA-100-A (KS)  (07/06)
Page 1 of 21

## SECTION I – ELIGIBILITY AND EFFECTIVE DATES OF INSURANCE

**ELIGIBILITY AND CLASSIFICATION OF INSUREDS:**

The following individuals are eligible to become Insureds upon completion of the **Service Waiting Period** as indicated below, and the submission of completed enrollment material, if required:

**Class I:**    All regular, **Active** full-time employees, not covered by a bargaining agreement, who work at least 30 hours per week and meet the eligibility requirements as defined by the employer.

If a **Covered Person** suffers an **Injury** resulting in a **Covered Loss**, and he or she is covered under more than one class, We will pay only one benefit, the largest benefit.

**ELIGIBILITY OF INSURED'S DEPENDENTS:**

Individuals who enroll may elect to cover their eligible **Dependents**. An eligible **Dependent** includes the Insured's legally married **Spouse**, as long as he or she is not legally separated from the **Insured** employee, and the **Insured's Dependent Child(ren)**. A legally married **Spouse** will not be eligible as a **Dependent** if he or she is also an **Insured** under this **Policy**. If the **Insured** and his or her legally married **Spouse** are both **Insured's** under this **Policy**, only one may select a **Plan** covering their mutual **Dependents**.

**SERVICE WAITING PERIOD:**

Defined by the employer.

**EFFECTIVE DATE OF INSURANCE FOR THE INSURED:**

A.   For eligible individuals hired prior to January 1, 2009:
     January 1, 2009, provided the completed enrollment material is received by the **Policyholder** on or prior thereto.

B.   For eligible individuals hired on or after January 1, 2009:
     the day following completion of the required **Service Waiting Period** indicated above, provided the completed enrollment material is received by the **Policyholder** prior thereto.

**Note:**    Employees choosing not to enroll during the new employee enrollment period will not be eligible to enroll again until the next annual enrollment period.

Changes to **Coverage** for those employees that are enrolled can only be made upon the occurrence of a **Life Event** or during the annual enrollment period.

An enrollment period will be held annually with **Coverage** to be effective January 1.

05/17/2010 09.52 FAX  9288557228        FPS MEDICAL CENTER                    ☑ 005/024

## SECTION II – SCHEDULE

| | Classes Covered |
|---|---|
| **COVERAGE(S):** | |
| 24 Hour Accident Protection, Business and Pleasure, Excluding Corporate Owned or Leased Aircraft, H-1 | All |
| Exposure and Disappearance Coverage | All |
| **BENEFITS:** | Classes Covered |
| Accidental Death Benefit | All |
| Principal Sum: | |

Class I:  An employee may purchase one of the following amounts of Principal Sum:

| Option | Principal Sum* |
|---|---|
| 0 | 0 |
| 1 | $ 50,000 |
| 2 | $100,000 |
| 3 | $200,000 |
| 4 | $300,000 |
| 5 | $400,000 |
| 6 | $500,000 |

The Option selected is subject to ten (10) times the employee's flex pay.

The Principal Sum for Covered Dependents will be a percentage of the Insured's Principal Sum, as follows:

| Plan Selected | % Spouse | % Child(ren) |
|---|---|---|
| Spouse only: | 50% | 0 |
| Dependent Child(ren) only: | 0 | 10% |
| Spouse and Dependent Child(ren) | 50% | 10% |

At age 70, for the Insured employee only, the Principal Sum will be reduced based on the Insured employee's previous Principal Sum per the following schedule:

| Age at Date of Loss | Percent of Principal Sum |
|---|---|
| 70-74 | 65% |
| 75-79 | 45% |
| 80-84 | 30% |
| 85 & Over | 15% |

| | Classes Covered |
|---|---|
| Accidental Dismemberment and Covered Loss of Use Benefit Principal Sum: | All |
| Same as above. | |
| Accidental Dismemberment and Covered Loss of Use Benefit For Covered Dependent Children | All |
| Coma Benefit | All |

U-VA-100-A (KS)  (07/06)
Page 4 of 21

## SECTION III – DEFINITIONS

**Accident or Accidental** means a sudden, unexpected, specific and abrupt event that occurs by chance at an identifiable time and place during the Policy term.

**Active and Actively at Work** describes an employee who is able and available for active performance of all of his or her regular duties. Short term absence because of a regularly scheduled day off, holiday, vacation day, jury duty, funeral leave, or personal time off is considered **Actively at Work** provided the employee is able and available for active performance of all of his or her regular duties and was working the day immediately prior to the date of his or her absence.

**Aggregate Limit of Liability** means the total benefits We will pay for a Covered Accident or Covered Accidents set forth in the Schedule. For purposes of the **Aggregate Limit of Liability** provision, **Covered Accident or Covered Accidents** will include a **Covered Loss or Covered Losses** arising out of a single event or related events or originating cause and includes a resulting **Covered Loss or Covered Losses**. If the total benefits under the **Aggregate Limit of Liability** is not enough to pay full benefits to each **Covered Person**, We will pay each one a reduced benefit based upon the proportion that the **Aggregate Limit of Liability** bears to the total benefits which would otherwise be paid.

**Chartered Aircraft** means an aircraft operated by a company with an air carrier or commercial operating certificate issued by the Federal Aviation Administration or the equivalent certificate issued by a foreign government, which the **Policyholder** has the right to use for no more than ten (10) consecutive days and/or for no more than fifteen (15) days in a one (1) year period.

**Controlled by,** as used in the **Coverages** Section, means the **Policyholder** has the right to use a block of aircraft flight time for 25 or more hours in a one (1) year period or for 100 hours or more without a specified term, from a company which is in the business of providing aircraft for private use. A **Chartered Aircraft** will not be considered **Controlled by** the **Policyholder**.

**Coverage(s)** means the event or events described in the **Hazards** of this **Policy** to which benefits and additional benefits apply. The **Hazards** are listed in the **Coverages** Section on the Schedule.

**Covered Accident** means an **Accident** that results in a **Covered Loss**.

**Covered Injury** means an **Injury** directly caused by accidental means which is independent of all other causes, results from a **Covered Accident**, occurs while the **Covered Person** is insured under this **Policy**, and results in a **Covered Loss**.

**Covered Loss** means a loss which meets the requisites of one or more benefits or additional benefits, results from a **Covered Injury**, and for which benefits are payable under this **Policy**.

**Covered Person** means any person who has insurance under the terms of this **Policy**. It includes the **Insured** and his or her Spouse, as long as he or she is not legally separated from the **Insured** employee, and/or **Dependent Child(ren)** if a **Plan** covering the Spouse and/or **Dependent Child(ren)** is selected.

**Dependent** means an **Insured's** Spouse and **Dependent Child(ren)**, as defined in this section. The **Dependent** will only be a **Covered Dependent** if a **Plan** covering **Dependents** is selected.

**Dependent Child(ren),** if used in this **Policy**, means those unmarried natural **Child(ren)** of the **Insured** or legally adopted **Child(ren)** (including step or foster **Child(ren)**) from 14 days from birth to the **Child's** 19 (nineteenth) birthday, or to age 24 if attending college or other school on a full-time basis, who rely on the **Insured** their support, provided they are not members of the armed services, are dependent upon the **Insured** employee for support and maintenance, living with the **Insured** employee and claimed as a dependent on the **Insured** employee's Federal Income Tax return. Or, who prior to his or her termination of coverage became incapable of self-sustaining employment by reason of mental retardation or physical handicap. The **Dependent Child(ren)** will only be **Covered Dependent Child(ren)** if a **Plan** covering **Dependent Child(ren)** is selected.

**Injury** means a bodily **Injury**.

**Insured** means an individual who is eligible for **Coverage** under this **Policy** as provided in the Eligibility and Classification of **Insureds** part of Section I, and who completes the enrollment material, if required.

**Owned Aircraft** means an aircraft in which the **Policyholder** has legal or equitable title. Fractional ownership in a company which is in the business of providing aircraft for private use will be deemed to be equitable title in the aircraft used by the **Policyholder**.

**Plan** means the **Plan** design as described on the Schedule.

**Policy** means this Group Accident Insurance **Policy**.

**Policyholder** means the group named on the front page of this **Policy**.

05/17/2010 09:52 FAX  9288557229          FPS MEDICAL CENTER                          ☒007/024

**Service Waiting Period** means the continuous length of time a person is required to be employed by the **Policyholder** prior to being covered under this **Policy**.

**Specialized Aviation Activity** means an aircraft while it is being used for one or more of the following activities:

| | |
|---|---|
| acrobatic or stunt flying | hang gliding |
| aerial photography | hunting |
| banner towing | parachuting or skydiving |
| bird or fowl herding | pipe line inspection |
| crop dusting | power line inspection |
| crop seeding | racing |
| crop spraying | skywriting |
| endurance tests | test or experimental purpose |
| exploration | |
| fire fighting | |

flight on a rocket-propelled or rocket launched aircraft

flight which requires a special permit or waiver from the authority having jurisdiction over civil aviation, even though granted

**Spouse**, if used in this **Policy**, means the **Insured's** legally married **Spouse** under age 70.  A **Spouse** will only be a **Covered Spouse** if a **Plan** covering the **Insured's Spouse** is selected.

**Under lease**, as used in the **Coverages** Section, means an aircraft which the **Policyholder** does not own but has the right to use, under a written agreement, for more than ten (10) consecutive days and/or for more than fifteen (15) days in a one (1) year period. A **Chartered Aircraft** will not be considered **Under lease**.

**We, Us, and Our** refers to Zurich American Insurance Company.

05/17/2010  09:52  FAX  9288557229          FPS MEDICAL CENTER                          ⧉008/024



## SECTION IV – COVERAGES

**24 HOUR ACCIDENT PROTECTION, BUSINESS AND PLEASURE EXCLUDING CORPORATE OWNED OR LEASED AIRCRAFT, H-1**

The **Hazards** insured against by this **Policy** are:

A **Covered Injury** sustained by a **Covered Person** anywhere in the world, subject to the terms, conditions, exclusions and limitations under this **Policy**.

**Hazard Limitations:**

Air travel **Coverage** is limited to a loss sustained during a trip, while the **Covered Person** is a passenger, riding in or on, boarding or getting off:

A.  any civilian aircraft with a current and valid normal, transport, or commuter type standard airworthiness certificate as defined by the Federal Aviation Administration or its successor or an equivalent certification from a foreign government. This aircraft must be operated by a pilot with a current and valid:

    1.  medical certificate; and

    2.  pilot certificate with a proper rating to pilot such aircraft.

B.  any aircraft which is not subject to a certificate of airworthiness: whose design and customary and regular purpose is for transporting passengers; and which is operated by the Armed Forces of the United States of America or the Armed Forces of any foreign government.

**Hazard Exclusions:**

**Coverage** is not provided:

A.  If the **Covered Person** is the pilot, operator, member of the crew or cabin attendant of any aircraft.

B.  Unless **We** have previously consented in writing to the use, **Coverage** is not provided for any loss, caused by, contributed to, resulting from riding in or on, boarding, or getting off:

    1.  any aircraft other than those expressly stated in this **Coverage**;

    2.  any aircraft **Owned** or **Controlled** by, or **Under** lease to the **Policyholder**;

    3.  any aircraft **Owned** or **Controlled** by, or **Under** lease to an **Insured** or a member of a **Covered Person's** family or household;

    4.  any aircraft operated by the **Policyholder** or one of the **Policyholder's** employees including members of an employee's family or household;

    5.  any aircraft engaged in a **Specialized Aviation Activity**;

    6.  any conveyance used for tests or experimental purposes, or in a race or speed test.

Other Limitations and Exclusions that apply to this **Hazard** are in Section VII General Exclusions and Section VIII General Limitations.

## EXPOSURE AND DISAPPEARANCE COVERAGE

If a Covered Person is exposed to weather because of an Accident and this results in a Covered Loss, We will pay the applicable Principal Sum, subject to all Policy terms.

If the conveyance in which a Covered Person is riding disappears, is wrecked, or sinks, and the Covered Person is not found within 365 days of the event, We will presume that the person lost his or her life as a result of Injury. If travel in such conveyance was covered under the terms of this Policy, We will pay the applicable Principal Sum, subject to all Policy terms. We have the right to recover the benefit if We find that the Covered Person survived the event.

Limitations and Exclusions that apply to this Hazard are in Section VII General Exclusions and Section VIII General Limitations.

05/17/2010 09:52 FAX  9288557229          FPS MEDICAL CENTER                    ☑010/024

## SECTION V – BENEFITS

### ACCIDENTAL DEATH BENEFIT

If a Covered Person suffers a loss of life as a result of a Covered Injury, We will pay the applicable Principal Sum. The death must occur within 365 days of the Covered Injury.

This benefit is subject to the limitations in Section VIII General Limitations.

### ACCIDENTAL DISMEMBERMENT AND COVERED LOSS OF USE BENEFIT

If an Injury to an Insured employee or a Covered Spouse results in any of the following Covered Losses, We will pay the benefit amount shown. The Covered Loss must occur within 365 days of the Accident.

The benefit amounts are based on the Principal Sum of the person suffering the Covered Loss.

| Covered Loss of | Benefit |
|---|---|
| 1. Both Hands or Both Feet | Principal Sum |
| 2. One Hand and One Foot | Principal Sum |
| 3. One Hand or One Foot plus the loss of Sight of One Eye | Principal Sum |
| 4. Sight of Both Eyes | Principal Sum |
| 5. Speech and Hearing | Principal Sum |
| 6. Speech or Hearing | 50% of Principal Sum |
| 7. One Hand; One Foot; or Sight of One Eye | 50% of Principal Sum |
| 8. Thumb and Index Finger of the same Hand | 25% of Principal Sum |

| Covered Loss of Use of | |
|---|---|
| 1. Four Limbs | Principal Sum |
| 2. Three Limbs | 75% of Principal Sum |
| 3. Two Limbs | 66 2/3% of Principal Sum |
| 4. One Limb | 50% of Principal Sum |

For purposes of this benefit:

1. **Covered Loss** means:
   a. For a foot or hand, actual severance through or above an ankle or wrist joint;
   b. Actual severance through or above the metacarpophalangeal joint of a thumb or index finger;
   c. Total and permanent loss of sight;
   d. Total and permanent loss of speech;
   e. Total and permanent loss of hearing.

2. **Covered Loss of Use** means total paralysis of a Limb or Limbs, which is determined by Our competent medical authority to be permanent, complete and irreversible. Limb means an arm or a leg.

This benefit is subject to the limitations in Section VIII General Limitations.

### ACCIDENTAL DISMEMBERMENT AND COVERED LOSS OF USE BENEFIT FOR COVERED DEPENDENT CHILDREN

If an Injury to a Covered Dependent Child(ren) results in any of the following Covered Losses, We will pay the benefit shown. The Covered Loss must occur within 365 days of the Accident.

| Covered Loss of | Percentage of Insured's Principal Sum |
|---|---|
| 1. Both Hands or Both Feet | 50% to a maximum of $100,000 |
| 2. One Hand and One Foot | 50% to a maximum of $100,000 |
| 3. One Hand or One Foot plus the loss of Sight of One Eye | 50% to a maximum of $100,000 |
| 4. Sight of Both Eyes | 50% to a maximum of $100,000 |
| 5. Speech and Hearing | 50% to a maximum of $100,000 |
| 6. Speech or Hearing | 25% to a maximum of $ 50,000 |
| 7. One Hand; One Foot; or Sight of One Eye | 25% to a maximum of $ 50,000 |
| 8. Thumb and Index Finger of the Same Hand | 12.5% to a maximum of $ 25,000 |

| Covered Loss of Use of | |
|---|---|
| 1. Four Limbs | 50% to a maximum of $100,000 |
| 2. Three Limbs | 37.5% to a maximum of $75,000 |
| 3. Two Limbs | 33% to a maximum of $66,000 |
| 4. One Limb | 25% to a maximum of $50,000 |

For purposes of this Benefit:

1. Covered Loss means:
   a. For a foot or hand, actual severance through or above an ankle or wrist joint;
   b. Actual severance through or above the metacarpophalangeal joint of a thumb or index finger;
   c. Total and permanent loss of sight;
   d. Total and permanent loss of speech;
   e. Total and permanent loss of hearing.

2. Covered Loss of Use means total paralysis of a Limb or Limbs, which consecutive months and is determined by Our competent medical authority to be permanent, complete and irreversible. Limb means an arm or a leg.

This benefit is subject to the limitations in Section VIII General Limitations.

### COMA BENEFIT

If a Covered Person suffers an Injury resulting in a Covered Loss within 365 days of a Covered Accident, and such Injury causes the Covered Person to be in a Coma for at least thirty-one (31) consecutive days, We will pay a Coma Benefit.

The Coma Benefit is equal to 1% of the Covered Person's Principal Sum, and will be paid each month the Covered Person remains in a Coma following the initial thirty-one (31) day period. The Coma Benefit will end on the earliest of the following:

1. the Covered Person is no longer in a Coma which directly resulted from the Injury;
2. the Covered Person has received a Coma Benefit for 100 months.

Coma will be determined by Our duly licensed physician.

This benefit is subject to the limitations in Section VIII General Limitations.

06/17/2010 09:52 FAX  9288557228          FPS MEDICAL CENTER                    ☑ 012/024

## SECTION VI – ADDITIONAL BENEFITS

**AFTER SCHOOL CARE BENEFIT**

If an Insured selects a Plan covering his or her Dependents and the Insured or his or her Covered Spouse and the Insured suffers an Injury resulting in a Covered Loss which is payable under the Accidental Death Benefit, We will reimburse the charges actually incurred for the after school care to the individual who incurs the expense for each Covered Dependent Child, who is ten (10) years old or less, up to a maximum of the lesser of:

1. 2% of the applicable Principal Sum paid under the Accidental Death Benefit per year; or
2. $2,000 per year.

The after school care provider may not be a relative or family member and proof, acceptable to Us must be provided to establish eligibility for this benefit.

If the Insured and his or her Covered Spouse both die as a result of the same Covered Injury, and We pay an Accidental Death Benefit on both Covered Persons, only the Insured's Principal Sum will be used to calculate the amount applicable under this benefit.

This benefit will be paid each year for four (4) consecutive years if the Covered Dependent Child is under age ten (10) at the time of each payment.

**COBRA BENEFIT**

If an Insured selects a Plan covering his or her Dependents and the Insured suffers an Injury resulting in a Covered Loss, which is payable under the Accidental Death Benefit, and the Insured is covered under a medical plan sponsored by the Policyholder, We will pay an additional benefit to continue medical insurance for the Insured's surviving family members for a period of one (1) year. The amount payable under this benefit will be the lesser of:

1. 5% of the Insured's Principal Sum;
2. $5,000; or
3. The actual cost to the surviving family members to continue medical coverage for one (1) year under the plan sponsored by the Policyholder.

**CONTINUATION OF INSURANCE BENEFIT**

If an Insured selects a Plan covering his or her Dependents, and the Insured suffers an Injury resulting in a Covered Loss, which is payable under the Accidental Death Benefit, all Coverages under this Policy which were in force on the date of the loss, with respect to Covered Persons other than the Insured, will be continued automatically for 365 days after the date of the loss at no additional cost.

U-VA-100-A (KS)   (07/06)
Page 12 of 21



## DAY CARE BENEFIT

If an Insured selects a Plan covering his or her Dependents and the Insured or his or her Covered Spouse suffers an Injury resulting in a Covered Loss, which is payable under the Accidental Death Benefit, We will pay an additional benefit for day care expenses to the individual who incurs the expense on behalf of each Covered Dependent Child if:

1. on the date of the Accident, the Covered Dependent Child was enrolled in an Accredited Child Care Facility, or enrolls in such facility within ninety (90) days from the date of loss; and
2. the Covered Dependent Child is under age 13.

The Day Care Benefit will be equal to the lesser of:

1. the actual cost of the child care;
2. 3% of the Principal Sum of the Covered Person who suffered the Covered Loss; or
3. $3,000.

If both the Insured and his or her Covered Spouse suffer a simultaneous Covered Loss which is payable under the Accidental Death Benefit, the Day Care Benefit will be based on the Insured's Principal Sum.

The Day Care Benefit will be paid annually for four (4) consecutive years if:

1. the Covered Dependent Child is under age 13 at the time of each annual payment; and
2. proof, acceptable to Us, is received by Us that verifies that the Covered Dependent Child remains enrolled in an Accredited Child Care Facility.

An Accredited Child Care Facility means:

1. a child care facility that operates pursuant to state and local laws;
2. is licensed by the state for such child care facilities; and
3. has been provided with a Tax Identification Number by the Internal Revenue Service.

An Accredited Child Care Facility does not include a hospital; the child's home; a nursing or convalescent home; a facility for the treatment of mental disorders; an orphanage; or a treatment center for drug and alcohol abuse.

## HEARING AID OR PROSTHETIC APPLIANCE BENEFIT

If a Covered Person suffers an Injury resulting in a Covered Loss, which is payable under the Accidental Dismemberment and Covered Loss of Use Benefit, We will pay an additional benefit provided:

1. the Covered Person is required to use a hearing aid or prosthetic appliance;
2. the Injury that caused the payment of the Accidental Dismemberment and Covered Loss of Use Benefit is the same Injury that requires the Covered Person to use the Hearing Aid or Prosthetic Appliance; and
3. the Hearing Aid or Prosthetic Appliance was required within one (1) year of the Injury.

The amount We will pay will be equal to the one time cost of the Hearing Aid or Prosthetic Appliance actually paid by the Covered Person.

This benefit will not be paid unless:

1. the Hearing Aid or Prosthetic Appliance was prescribed by a legally qualified physician or surgeon who is not the Covered Person's spouse, child, or relative; and
2. presentation of proof of payment is provided to Us.

For purposes of this benefit, Prosthetic Appliance will include an artificial limb or eye.

No payment will be made for ordinary living, traveling or clothing expenses.

The maximum amount payable under all provisions of this benefit combined will be the lesser of 10% of the Covered Person's Principal Sum or $10,000.

05/17/2010 09:53 FAX  9288557229          FPS MEDICAL CENTER                      ☒014/024

## HIGHER EDUCATION BENEFIT

If the Insured selects a Plan covering his or her Dependent Child(ren) and the Insured suffers an Injury resulting in a Covered Loss, which is payable under the Accidental Death Benefit, We will pay an additional benefit for higher education expenses to the individual who incurs the expense for each Covered Dependent Child.

A Covered Dependent Child is eligible for the Higher Education Benefit if on the date of the Accident:

1.  he or she is enrolled as a full-time student in an accredited college, university or trade school; or
2.  he or she is at the 12th grade level and enrolls in an accredited college, university or trade school within one (1) year from the date of the Accident.

The Higher Education Benefit will be equal to 5% of the Insured's Principal Sum, to a maximum of $5,000. This amount will be paid annually for four (4) consecutive years if the Covered Dependent Child continues his or her education. Before this benefit is paid each year, the Covered Dependent Child must present written proof, acceptable to Us, that he or she is attending an institution of higher learning on a full-time basis.

If, at the time of the Accident, a Plan covering the Insured's Dependents was selected, but there are no Covered Dependent Child(ren) who qualify for this benefit, We will pay an additional benefit of $1,000 to the designated beneficiary.

## HOME ALTERATION AND VEHICLE MODIFICATION BENEFIT

If a Covered Person suffers an Injury resulting in a Covered Loss, which is payable under the Accidental Dismemberment and Covered Loss of Use Benefit, We will pay an additional benefit for home alterations and/or vehicle modifications, provided:

1.  the Covered Person is required to use a wheelchair to be ambulatory on a permanent basis; and
2.  the Injury that caused the payment of the Accidental Dismemberment and Covered Loss of Use Benefit is the same Injury that requires the Covered Person to need the wheelchair.

The amount We will pay will be equal to:

1.  the one time cost of alterations to the Covered Person's primary residence to make it wheelchair accessible and habitable; and
2.  the one time cost of modifications necessary to his or her motor vehicle to make the vehicle accessible or drivable.

Benefits will not be payable unless:

1.  alterations and/or modifications are made by a person or persons experienced in such alterations and/or modifications, and are recommended by a recognized organization providing support and assistance to wheelchair users; and
2.  presentation of proof of payment is provided to Us.

The maximum amount payable under all provisions of this benefit combined will be the lesser of 10% of the Covered Person's Principal Sum or $10,000.

## NATURAL DISASTER BENEFIT

If a Covered Person suffers an Injury resulting in a Covered Loss, which is payable under the Accidental Death or Accidental Dismemberment and Covered Loss of Use Benefit as a direct result of a Natural Disaster, We will pay an additional benefit equal to the lesser of 10% of the Covered Person's Principal Sum or $10,000.

For purposes of this benefit, Natural Disaster means a storm (wind, rain, snow, sleet, hail, lightning, dust or sand), earthquake, flood, volcanic eruption, wildfire or other similar event.

## REHABILITATION BENEFIT

If the Insured suffers an Injury resulting in a Covered Loss, which is payable under the Accidental Dismemberment and Covered Loss of Use Benefit, We will pay an additional benefit for the Reasonable and Customary expenses actually incurred for Rehabilitation Training, in an amount equal to the lesser of:

1. the actual expenses that are incurred within two (2) years from the date of the Accident for the Rehabilitation Training;
2. $10,000; or
3. 10% of the Insured's Principal Sum.

Rehabilitation Training means a treatment program that:

1. is prescribed by a licensed physician acting within the scope of his or her license that is approved by Us prior to the provision of services;
2. is required due to the Insured's Injury; and
3. prepares the Insured for an occupation that he or she would not have engaged in except for the Injury.

Reasonable and Customary expenses means the common charges made by other health care providers in the same locality for the treatment furnished. If the common charges for a service cannot be determined due to the unusual nature of such service, We will determine the amount based upon:

1. the complexity involved;
2. the degree of professional skill required; and
3. any other pertinent factors.

We reserve the right to make the final determination of what is Reasonable and Customary.

## SEAT BELT/AIR BAG BENEFIT

If a Covered Person suffers an Injury resulting in a Covered Loss, which is payable under the Accidental Death Benefit, and the Injury which caused the accidental death directly resulted from an automobile Accident, We will pay an additional benefit, which equals 10% of the applicable Principal Sum up to a maximum of $25,000, provided that the Covered Person was:

1. operating or riding as a passenger in any private passenger automobile designed for use primarily on public roads; and
2. wearing an original, equipped, factory installed or manufacturer authorized and unaltered seat belt, or lap and shoulder restraint at the time of the Injury.

Verification of the Covered Person's actual use of the seat belt or lap and shoulder restraints is required as follows:

1. in the official law enforcement report of the Accident, through certification by the investigating officers; or
2. by other reasonable proof, acceptable to Us.

An additional benefit equal to 5% of the Covered Person's Principal Sum to a maximum of $5,000, will be paid if the Covered Person was driving a private passenger automobile with a manufacturer equipped driver-side air bag or riding as a passenger in a private passenger automobile with a manufacturer equipped passenger-side air bag, provided the Covered Person's seat belt or lap and shoulder restraint was properly fastened at the time of the Accident. The proper functioning and/or deployment of the air bag must be certified in the official law enforcement report of the Accident, through certification by the investigating officers or by other reasonable proof, acceptable to Us.

We will not pay a Seat Belt or Air Bag Benefit if the driver of the automobile in which the Covered Person was riding was either:

1. under the influence of alcohol;
   a. A driver will be conclusively presumed to be under the influence of alcohol if the level of alcohol in his or her blood exceeds the amount at which a person is presumed, under the law of the locale in which the Accident occurred, to be under the influence of alcohol or intoxicating liquor if operating a motor vehicle.
   b. An autopsy report from a licensed medical examiner, law enforcement officer reports, or similar items will be considered proof of the driver's intoxication. Or,
2. under the influence of any prescription drug, narcotic, or hallucinogen, unless such prescription drug, narcotic, or hallucinogen was prescribed by a physician and taken in accordance with the prescribed dosage.

05/17/2010 09:53 FAX  9288557229          FPS MEDICAL CENTER                     Ø016/024

## SPOUSE RETRAINING BENEFIT

If an Insured, selects a **Plan** covering his or her **Spouse**, and the **Insured** suffers an **Injury** resulting in a **Covered Loss**, which is payable under the Accidental Death Benefit, We will pay to his or her **Covered Spouse**, the actual cost of any professional or trade-training program in which the **Covered Spouse** enrolls, provided:

1. the purpose of the training program is to obtain an independent source of support and maintenance; and
2. the actual cost is incurred within thirty (30) months from the death of the **Insured**.

The maximum amount payable under this benefit will be $3,000.

## SURVIVING SPOUSE BENEFIT

If an **Insured**, selects a **Plan** covering his or her **Spouse** and the **Insured**, suffers an **Injury** resulting in a **Covered Loss**, which is payable under the Accidental Death Benefit, We will pay an additional benefit to his or her **Covered Spouse**. The monthly benefit will be equal to 1% of the **Insured's Principal Sum** and will be paid for a period of six (6) months.

## TRAVEL ASSISTANCE PLAN

This **Travel Assistance Plan** will apply to the following **Covered Persons** when they are traveling 100 miles or more from their **Principal Residence**: the **Insured** and his or her **Spouse** and/or **Child(ren)**, if covered under this **Policy**. The transportation and/or services provided under this **Travel Assistance Plan** must be pre-authorized by Us. Under this **Policy**, the **Travel Assistance Plan** consists of the following:

- **TRAVEL ASSISTANCE BENEFITS**

    ### Medical Evacuation

    If a **Covered Person** is **Injured** or **Ill** on a **Covered Trip** and is being treated in a hospital, medical facility, clinic or by a medical provider which, based upon Our evaluation, cannot provide medical care in accordance with Western Medical Standards, We will arrange for, and cover the cost for, the transport of the **Covered Person** to the nearest hospital or medical facility which can provide such care. We must be contacted prior to the transport and We must pre-authorize the transport for benefits to be payable. No transport will be arranged for and/or covered without the prior recommendation of the attending physician.

    For the limited purpose of determining Our liability, We have the sole right to determine the standard of care of a hospital or medical facility, clinic or medical provider.

    ### Medical Repatriation

    If a **Covered Person** is **Injured** or **Ill** on a **Covered Trip** and has sufficiently recovered to travel in a non-scheduled commercial air flight or a regularly scheduled air flight with special equipment and/or personnel with minimal risk to his or her health, We will arrange for, and cover the cost for, the transport of the **Covered Person** to his or her **Principal Residence**, or to his or her residence in the country where it is currently assigned (at his or her option), in such transportation. We must be contacted prior to the transport and We must pre-authorize the transport for benefits to be payable. No transport will be arranged for and/or covered without the prior recommendation of the attending physician. For the limited purpose of determining Our liability, We have the sole right to determine the scheduling, the mode of transportation and the special equipment and/or personnel which are covered.

    ### Non-Medical Repatriation

    If a **Covered Person** is **Injured** or **Ill** on a **Covered Trip** and has sufficiently recovered to travel in a regularly scheduled economy class air flight without special equipment or personnel with minimal risk to his or her health, We will pay for the increase in cost to change the travel date on the return air flight and/or for an upgrade in the seating, to his or her **Principal Residence** or to the country where he or she is currently assigned (at his or her option). We must be contacted prior to the transport and We must agree to the change in the travel date and/or upgrade for benefits to be payable. No change or upgrade will be made without the prior recommendation of the attending physician. The upgrade will be subject to Our sole discretion.

*Continued*

U-VA-100-A (KS)   (07/06)
Page 16 of 21

05/17/2010 09:53 FAX  9288557089          FPS MEDICAL CENTER                    ☑017/024

*Travel Assistance Plan continued*

### Return of Remains

If a Covered Person dies while on a Covered Trip, We will make arrangements and pay for the local preparation of the body for transport or cremation (not including the cost of cremation), travel clearances and authorizations, standard shipping container (not including urn or coffin) and transportation of the body or remains to its country of destination. We must be contacted prior to the preparation and transportation of the body and We must pre-authorize the services and transportation for benefits to be payable.

### Visit to Hospital

If a Covered Person is scheduled to be hospitalized for more than seven (7) consecutive days while on a Covered Trip, We will arrange for, and cover the cost of, a regularly scheduled round trip economy class air flight of the person chosen by the Covered Person to visit the Covered Person while he or she is hospitalized. We must pre-authorize the transportation for benefits to be payable.

### Return of Child

If a Covered Person is traveling with a Child(ren), who is under nineteen (19) years of age or a Child(ren) who prior to age nineteen (19) became incapable of self-sustaining employment by reason of mental retardation or physical handicap and remains chiefly dependent upon the Covered Person for support and maintenance, while on a Covered Trip, and due to the Illness or Injury to the Covered Person, such Child(ren) is left unattended, We will arrange for, and cover the cost of, the transport of the Child(ren) by a regularly scheduled economy class air flight to the location chosen by the Covered Person, and for an attendant, if applicable. We must pre-authorize the transportation of the Child(ren) and attendant, if applicable, for benefits to be payable.

### Return of Companion

If a Covered Person is traveling with a companion while on a Covered Trip, and due to the Illness or Injury to the Covered Person the Covered Person cannot complete the Covered Trip as scheduled, We will pay for the lesser of the change fee for the companion's return air flight or a one-way economy class flight. We must pre-authorize such costs for benefits to be payable.

- **TRAVEL ASSISTANCE EXCLUSIONS**

We will not provide the Travel Assistance Plan if the Coverage is excluded under Section VII – General Exclusions of the Policy, or if:

1. the Covered Trip was undertaken for the specific purpose of securing medical treatment;
2. the Injuries or Illness requiring medical services resulted from the Covered Person being under the influence of any controlled substance, unless such controlled substance was prescribed by a physician and was taken in accordance with the prescribed dosage;
3. with respect to a MEDICAL EVACUATION, the medical care, which is being provided, is consistent with Western Medical Standards. We have sole discretion in making that determination;
4. with respect to MEDICAL EVACUATION, it is not medically necessary to transport the Covered Person to another hospital or medical facility. We have the sole discretion in making that determination;
5. based upon the medical condition of the Covered Person and/or the local conditions and circumstances, We determine that MEDICAL EVACUATION or MEDICAL REPATRIATION is not appropriate. We have sole discretion in making that determination;
6. any local, state, country or international law prohibits the provision of the transportation or services provided for under this plan. We will be fully and completely excused from performance and discharged from any contractual obligation;
7. We did not pre-authorize the transportation and/or services;
8. the Injuries or Illness resulted in whole or in part from the Covered Person being intoxicated. A Covered Person will be conclusively presumed to be intoxicated if on or about the time of the incident which required medical treatment the level of alcohol in his or her blood exceeds the amount at which a person is presumed to be intoxicated if operating a motor vehicle in that jurisdiction. A report from a law enforcement officer, medical provider or similar report will be considered proof of the Covered Person's intoxication.

*Continued*

05/17/2010 09:53 FAX  9288567228          FPS MEDICAL CENTER                    ☑ 018/024

*Travel Assistance Plan continued*

- ### TRAVEL ASSISTANCE DEFINITIONS

  For purposes of this **Travel Assistance Plan** only, the following definitions apply:

  "**Covered Trip**" means when a **Covered Person** is traveling more than 100 miles from his or her **Principal Residence** and such travel is covered under the **Policy** and is not excluded under the TRAVEL ASSISTANCE EXCLUSIONS set forth above.

  "**Illness**" or "**Ill**" means a sickness or disease which impairs normal functions of the body.

  "**Injured**" "**Injury**" or "**Injuries**" means a bodily **Injury** or **Injuries** and is not limited to accidental bodily injuries.

  "**Principal Residence**" means the legal domicile of the **Covered Person**.

  "**Western Medical Standards**" means generally accepted medical standards comparable to those in the United States, Canada or Western Europe.

  For the purpose of the **Travel Assistance Plan**, if there are any differences in the definition of a term between the **Travel Assistance Plan** and the **Policy**, the definition in the **Travel Assistance Plan** will govern.

- ### TRAVEL ASSISTANCE - OTHER PROVISIONS

  **Right of Recovery**

  **We** have the right to recover any benefits that **We** have paid under this **Travel Assistance Plan** if the **Policyholder** or **Covered Person** recovers any money from a third party for the expenses incurred by the **Policyholder** or **Covered Person** that were covered under this **Travel Assistance Plan**. **We** will be reimbursed from such recovery and **We** will have a lien against that recovery. **We** have the right to recover any benefits from the **Covered Person** for transportation services and/or expenses, which were not covered under the **Travel Assistance Plan**.

  **Scope**

  **Illness**, as covered under this **Travel Assistance Plan**, is solely covered under this **Travel Assistance Plan**, and in no way supercedes or modifies the other **Coverages** provided under this **Policy**.

To contact **Us** regarding this **Travel Assistance Plan**, the **Covered Person** must call 1-800-263-0261 from the U.S. or Canada; and collect from anywhere else in the world at +1-416-977-0277.

## SECTION VII – GENERAL EXCLUSIONS

A loss will not be a **Covered Loss** if it is caused by, contributed to, or results from:

1. suicide or any attempt at suicide or intentionally self-inflicted **Injury** or any attempt at intentionally self-inflicted **Injury**;

2. war or any act of war, whether declared or undeclared;

3. involvement in any type of active military service;

4. illness or disease, regardless of how contracted;

5. participation in the commission or attempted commission of any felony, or an assault;

6. parasailing, bungee jumping, or any other extra-hazardous activity;

7. being intoxicated.

    a. A **Covered Person** will be conclusively presumed to be intoxicated if the level of alcohol in his or her blood exceeds the amount at which a person is presumed, under the law of the locale in which the **Accident** occurred, to be intoxicated, if operating a motor vehicle.

    b. An autopsy report from a licensed medical examiner, law enforcement officer reports, or similar items will be considered proof of the **Covered Person's** intoxication.

8. being under the influence of any prescription drug, narcotic, or hallucinogen, unless such prescription drug, narcotic, or hallucinogen was prescribed by a physician and taken in accordance with the prescribed dosage;

9. travel or flight in any aircraft except to the extent stated in the Coverage Section.

## SECTION VIII – GENERAL LIMITATIONS

**Limitation on Multiple Covered Losses.** If a **Covered Person** suffers more than one loss as a result of the same **Accident**, **We** will pay only one benefit, the largest benefit.

**Limitation on Multiple Benefits.** If a **Covered Person** can recover benefits under more than one of the following benefits: Accidental Death Benefit, Accidental Dismemberment and Covered Loss of Use Benefit, Coma Benefit, as a result of the same **Accident**, the most **We** will pay for these benefits in total is the **Covered Person's** Principal Sum.

**Limitation on Multiple Hazards.** If a **Covered Person** suffers a **Covered Loss** that is covered under more than one Hazard, **We** will pay only one benefit, the largest benefit.

## SECTION IX - TERMINATION OF INSURANCE

**A. Policy Termination.**

**Termination by Policyholder.** The **Policyholder** may terminate this **Policy** on the first renewal date or at any time after that date by delivering to **Us** a written notice to end this **Policy** at least thirty (30) days in advance of such termination. **We** will calculate and return the unearned premium, if any, using a standard short rate table. The **Policyholder** will send **Us** any additional amounts owed, if any, between the **Policy's** paid to date and the official date of termination.

**Termination by Us.** **We** may terminate this **Policy** by giving the **Policyholder** at least thirty (30) days notice of **Our** intent to terminate. Such notice will state the exact date the **Policy** will terminate. **We** may also end this **Policy** for non-payment of premium on any premium due date if the payment is not received prior to the end of the Grace Period. **We** will mail a notice of such termination to the **Policyholder's** last address shown in **Our** records.

**B. Termination of Individual's Insurance.**

**Insured.** Insurance terminates at the end of the month for which premium has been paid and during which any of the following occurs:

1. the **Policy** is terminated;

2. the **Insured** ceases to be eligible for insurance;

3. the **Insured** fails to pay the required premium, if the **Insured** is so required;

4. [the **Insured** reaches age 70;

5. the **Insured** retires.

**Covered Person** other than the **Insured**. Insurance terminates on the earliest of:

1. the date the insurance of the **Insured** terminates;

2. the first premium due date after the person no longer qualifies as a **Covered Person**; or

3. for the **Covered Spouse**, the date the **Covered Spouse** reaches age 70.

## SECTION X - HOW TO FILE A CLAIM

**A. Notice.** The Insured or the beneficiary, or someone on their behalf, must give Us written notice of the **Covered Loss** within ninety (90) days of such **Covered Loss**. The notice must name the **Covered Person** and the **Policy Number**. To request a claim form, the **Insured** or the beneficiary, or someone on their behalf may contact **Us** at 1-866-841-4771. The notice must be sent to the Claims Department, Zurich American Insurance Company, P.O. Box 307010, Jamaica, NY 11430-7010, or any of **Our** agents. Notice to **Our** agents is considered notice to **Us**.

**B. Claim Forms.** We will send the claimant proof of **Covered Loss** forms within fifteen (15) days after We receive notice. If the claimant does not receive the proof of **Covered Loss** form in fifteen (15) days after submitting notice, he or she can send **Us** a detailed written report of the claim and the extent of the **Covered Loss**. We will accept this report as a proof of **Covered Loss** if sent within the time fixed below for filing a proof of **Covered Loss**.

**C. Proof of Covered Loss.** Written proof of **Covered Loss**, acceptable to **Us**, must be sent within ninety (90) days of the **Covered Loss**. Failure to furnish proof of **Covered Loss** acceptable to **Us** within such time will neither invalidate nor reduce any claim if it was not reasonably possible to furnish the proof of **Covered Loss**, and the proof was provided as soon as reasonably possible.

## SECTION XI - PAYMENT OF CLAIMS

**A. Time of Payment.** We will pay claims for all **Covered Losses**, other than **Covered Losses** for which this **Policy** provides any periodic payment, immediately upon receipt of written proof of loss that is acceptable to **Us**. Unless an optional periodic payment is stated or chosen, any **Covered Loss** to be paid in periodic payments will be paid at the end of each four-week period. The unpaid balance, which remains when **Our** liability ends, will then be paid when **We** receive the proof of **Covered Loss** that is acceptable to **Us**.

**B. Who We Will Pay.**

1. **Loss of Life of an Insured.** **Covered Losses** resulting from the **Insured's** death are paid to the named beneficiary at the time of death. If there is no beneficiary named or the named beneficiary predeceases or dies at the same time as the **Insured**, We will pay the benefit to the beneficiary named by the **Insured** for the **Policyholder's** Group Life Insurance policy. If there is no beneficiary named by the **Insured** for the **Policyholder's** Group Life Insurance policy, or the named beneficiary predeceases or dies at the same time as the **Insured**, **We** will pay the benefit to the **Insured's** survivors in the following order:

   a. the **Insured's** legally married **Spouse**;

   b. the **Insured's** **Child**(ren);

   c. the **Insured's** parents;

   d. the **Insured's** brothers and sisters;

   e. the **Insured's** estate.

2. **Loss of Life of a Covered Person other than the Insured.** **Covered Losses** for the death of a **Covered Person** other than the **Insured** will be paid to the **Insured**. If the **Insured** pre-deceases or dies at the same time as the **Covered Person** other than the **Insured**, the benefit will be paid to the beneficiary unless the beneficiary designation has not been made or the beneficiary is no longer living at the time of death. In such case, the benefits will be paid to the **Insured's** estate.

3. **All Other Claims.** Benefits are to be paid to the **Insured** employee. He or she may direct in writing that all, or part of the **Accident Medical Expense Benefit**, if applicable, will be paid directly to the party who furnished the service. The direction may be changed by the **Insured** employee at any time up to the filing of the proof of **Covered Loss**.

**C. Physical Examination and Autopsy.** We have the right to examine a **Covered Person** when and as often as We may reasonably request while the claim is pending. Such examination will be at **Our** expense. We can have an autopsy performed unless forbidden by law.

**D. Choice of Service Provider.** The **Covered Person** has the sole right to choose his or her duly licensed physician and hospital.

## SECTION XII - GENERAL POLICY CONDITIONS

**A.  Beneficiaries.** The Insured has the sole right to name a beneficiary. The beneficiary has no interest in the Policy other than to receive certain payments. The Insured may change the beneficiary at any time unless he or she has assigned the interest in the Policy. In such case, the person to whom he or she has assigned the interest in this Policy may have the right to change the beneficiary. Consent to a change by a prior beneficiary is not needed unless the previous beneficiary was designated as irrevocable. Any beneficiary designation must be in writing on a form acceptable to Us.

**B.  Change or Waiver.** A change or waiver of any terms or conditions of this Policy must be issued by Us in writing and signed by one of Our executive officers. No agent has authority to change or waive Policy terms or conditions. A failure to exercise any of Our rights under this Policy will not be deemed as a waiver of such rights in the same or future situations.

**C.  Clerical Error.** A clerical error or omission will not increase or continue an Insured's Coverage, which otherwise would not be in force. If an Insured applies for insurance for which he or she is not eligible, We will only be liable for any premiums paid to Us.

**D.  Conformity with Statute.** Terms of this Policy that conflict with the laws of the state where it is delivered are amended to conform to such laws.

**E.  Entire Contract.** This Policy, the Policyholder application, Insured enrollment materials, and any attachments represent the entire insurance contract between the Policyholder and Us.

**F.  Grace Period.** Premiums are due for this Policy on or before the premium due date or renewal date, whichever applies. If the Policyholder does not pay a renewal premium when it is due, there is a thirty-one (31) day Grace Period to pay. During the Grace Period, the Policy will stay in force. The Policyholder will not have a Grace Period if We have given notice, at least thirty (30) days in advance, that We are going to terminate this Policy.

**G.  Insured Certificates.** We will give to the Policyholder a Certificate, in either paper or electronic format, for their Insureds, where required by state law. The Policyholder will either give or make these Certificates available to the Insureds. Such Certificate will contain a summary of terms that affect benefits.

**H.  Policyholder Records.** The Policyholder will keep a record of the Coverage, premium and other pertinent administrative information for each Insured, which, if acceptable to Us will be deemed to be a part of the Policy. We may examine these records at reasonable times while the Policy is in force and for six years after the termination of the Policy. The Policyholder will report to Us within a reasonable time all changes in information regarding an Insured. The Policyholder will indemnify Us for any benefits or other payments that are caused in whole or in part by the Policyholder's negligence or error in performing the record keeping function.

**I.  Suit Against Us.** No action on this Policy may be brought until sixty (60) days after written proof of Covered Loss has been sent to Us. Any action must commence within three (3) years, (five (5) years in Kansas and Tennessee; and six (6) years in South Carolina and Wisconsin) of the date the written proof of Covered Loss was required to be submitted. If the law of the state where the Covered Person lives makes such limit void, then the action must begin within the shortest time period permitted by law.

**J.  Renewal.** This Policy will automatically renew for an additional twelve-month period unless either party expresses its intent not to renew as specified by Policy termination provisions.

**K.  ERISA Claims Fiduciary.** The Policyholder agrees that the Policy constitutes the plan and plan document under the Employee Retirement Income Security Act of 1974 as amended (ERISA). The Policyholder designates Us as the claims fiduciary of this plan and gives Us the discretionary authority to determine eligibility for benefits and to construe the terms of the plan. The Policyholder agrees to comply with the disclosure and reporting requirements of ERISA regarding the plan and Our designation and authority as the claims fiduciary.

**YRC Worldwide Inc.**
**GTU 0030578**
**Effective: January 1, 2009**

U-VA-100-A (KS)   (07/06)
Page 21 of 21

05/17/2010 09:54 FAX  9288557429          FPS MEDICAL CENTER                    022/024

**AMENDATORY ENDORSEMENT**
**Administrative Change**



**ZURICH**

ZURICH AMERICAN INSURANCE COMPANY
Schaumburg, Illinois

This endorsement, effective January 1, 2009, forms a part of Policy No. GTU 0030578, issued to YRC Worldwide Inc..

It is understood and agreed that, item "I. **Suit Against Us**" under the Policy **SECTION XII - GENERAL POLICY CONDITIONS**, is deleted in its entirety and is replaced with the following:

I.   **Suit Against Us.**  No action at law or in equity shall be brought to recover on this **Policy** prior to the expiration of sixty (60) days after written proof of loss has been furnished in accordance with the requirements of this **Policy**.  No such action shall be brought after the expiration of five (5) years after the time written proof of loss is required to be furnished.

Except for the above, this Amendatory Endorsement does not vary, alter, waive, or extend any of the terms of the **Policy** to which it is attached.

Endorsement No. 1

Signed for by Zurich American Insurance Company _____          Date: November 26, 2008

U-VA-104-A (CW)  (09/06)
Page 1 of 1

05/17/2010 09:54 FAX  9288557229       FPS MEDICAL CENTER                    ☐ 023/024

## GENERAL PURPOSES AND LIMITATIONS OF THE
### KANSAS LIFE AND HEALTH
### INSURANCE GUARANTY ASSOCIATION
#### K.S.A. 40-3001 et. Seq.

### DISCLAIMER

THE KANSAS LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION MAY NOT PROVIDE COVERAGE FOR ALL OR A PORTION OF THE GROUP POLICY. IF COVERAGE IS PROVIDED IT MAY BE SUBJECT TO SUBSTANTIAL LIMITATIONS OR EXCLUSIONS, AND IS DEPENDENT UPON CONTINUED RESIDENCE IN KANSAS. THEREFORE YOU SHOULD NOT RELY UPON COVERAGE BY THE KANSAS LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION IN SELECTING AN INSURANCE COMPANY OR IN SELECTING AN INSURANCE POLICY. INSURANCE COMPANIES AND THEIR AGENTS ARE PROHIBITED BY LAW FROM USING THE EXISTENCE OF THE KANSAS LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION IN SELLING YOU ANY FORM OF AN INSURANCE POLICY, OR TO INDUCE YOU TO PURCHASE ANY FORM OF AN INSURANCE POLICY. EITHER THE KANSAS LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION OR THE KANSAS INSURANCE DEPARTMENT WILL RESPOND TO ANY QUESTIONS YOU MAY HAVE REGARDING THIS DOCUMENT.

THE KANSAS LIFE AND HEALTH
INSURANCE GUARANTY ASSOCIATION
300 Southwest Eighth Avenue
Topeka, Kansas 66603

THE KANSAS INSURANCE DEPARTMENT
420 Southwest Ninth Street
Topeka, Kansas 66612

This is a summary of the basic provisions of the Kansas Life and Health Insurance Guaranty Association Act. It is only a summary, and does not provide an in depth analysis of that act. Nothing in this summary modifies the rights of persons who are protected by the act, or the rights or duties of the association.

The purpose of the Kansas Life and Health Insurance Guaranty Association Act is to protect certain individuals who purchase life insurance, annuities or health insurance in Kansas. The act provides for the establishment of a funding mechanism to pay benefits or provided insurance coverage to individuals when a life or health insurance company is unable to meet its obligations by reason of insolvency or financial impairment.

(please turn to back of page)

However, not all individuals with a right to recover under life or health insurance policies are protected by the act. An individual is only provided protection when:

1. the individual, regardless of where they reside, except for nonresident certificate holders under the group policies or contracts, is the beneficiary, assignee or payee of a covered policy or contract-holder,

2. the individual policy or contract holder is a resident of the State of Kansas,

3. the individual is not a resident of the State of Kansas, but only with respect to an annuity contract which has been awarded pursuant to a judgment or settlement agreement in a medical malpractice liability action,

4. the individual is not a resident of the State of Kansas, but only under all of the following conditions:

   a. the impaired or insolvent insurer was a Kansas domestic insurer; and

   b. the insurer never had a license to do business in the state in which the individual resides; and

   c. the state in which the individual resides has an association similar to this state's; and

   d. the individual is not eligible for coverage by the association of the state in which the individual resides.

Additionally, the association may not provide coverage for the entire amount the individual expects to receive from the policy. The association does not provide coverage for any portion of the policy where the individual has assumed the risk, for any policy of reinsurance, for interest rates that exceed a specified average rate, for employers' plans that are self-funded, for parts of plans that provide dividends or credits in connection with the administration of the policy, for policies sold by companies not authorized to do business in Kansas, or for any unallocated annuity contract. Also, the association will not provide coverage where any guaranty protection is provided to the individual under the laws of the insolvent or impaired insurer's state of domicile.

The act also limits the amount the association is obligated to pay individuals on various policies. The association does not pay more than the amount of the contractual obligation of the insurance company. Regardless of the number of policies or contracts the associations is not obligated to pay amounts over $100,000 in net cash surrender and benefits for life insurance, $100,000 net cash surrender and benefits for health insurance, $100,000 in the present value of annuity benefits unless the annuity contract is awarded pursuant to judgment or settlement agreement in a medical malpractice liability action. Finally, the association is never obligated to pay more than $200,000 in the aggregate for the above Coverages as respects any one life.

# EXHIBIT
# "2"



**ZURICH**

April 23, 2010

Thomas Thomson
2517 Baranca Drive
Lake Havasu City, AZ 86493

Claim No:    742-0011188
Claimant:    Steven Thomson
Insured:     YRC Worldwide, Inc.
Policy No.:  GTU 0030578
D/L:         1/9/10

Dear Mr. Thomson:

We are responding on behalf of Zurich American Insurance Company. We are sorry for your loss.

We have completed our review of your claim for benefits under the above-referenced policy. Regrettably, for the reasons set forth below, we have determined that no benefits are payable in response to your claim.

YRC Worldwide, Inc. established and maintains an employee benefit plan, funded in part through Group Accident Policy No. GTU 0030578, issued by Zurich American Insurance Company. The policy provides benefits in the event of loss, including death, for injuries, defined by the policy as follows:

> "**Injury means a bodily Injury.**"
>
> "**Covered Injury means an Injury directly caused by accidental means which is independent of all other causes, results from a Covered Accident, occurs while the Covered Person is insured under this Policy, and results in a Covered Loss.**"
>
> "**Accident or Accidental means a sudden, unexpected, specific and abrupt event that occurs by chance at an identifiable time and place during the Policy term.**"
>
> "**Covered Loss means a loss which meets the requisites of one or more benefits or additional benefits, results from a Covered Injury, and for which benefits are payable under this Policy.**"

Benefits are subject to various enumerated exclusions and limitations, including the following:

"**Coverage is not provided:**

B.      Unless We have previously consented in writing to the use, **Coverage** is not provided for any loss, caused by, contributed to, resulting from riding in or on, boarding, or getting off:

        6. any conveyance used for tests or experimental purposes, or in a race or speed test."



Thomas Thomson
April 23, 2010
Page 2

The policy contains language vesting in Zurich the discretion to determine eligibility for benefits and interpret the terms of the plan.

In order to conduct a full and complete review of your claim for benefits, we requested, received and reviewed various documents relating to the circumstances surrounding your father's death. These documents included the completed claim form, a copy of the La Paz County Sheriff's Department LAW Incident Table, a copy of the La Paz Sheriff's Department Investigation Narrative with Supplemental Narrative, a copy of the Arizona Department of Health Services Death Registration Worksheet completed by Dr. Keith Shillito, Medical Examiner, on-line information regarding the Epic Racing Products/Best In the Desert 2010 race and the loss of Mr. Thomson and the Death Certificate. The Medical Examiner advised that there was no autopsy or toxicology done. Our understanding of the facts of this claim is based upon our review of this documentation.

Steven Thomson was employed by YRC Worldwide, Inc., and, as a benefit of his employment, was insured under the Zurich policy through YRC Worldwide, Inc. On January 9, 2010, Mr. Thomson was a participant in the Best in the Desert motorcycle race when he lost control of his motorcycle, resulting in his death, therefore benefits are not payable for this loss as a covered loss, in accordance with policy provisions, did not occur.

Claims for benefits under this policy are governed by a federal law known as the Employee Retirement Income Security Act of 1974 (ERISA). The policy contains an exclusion for a loss resulting from riding in or on, boarding, or getting off any conveyance used for tests or experimental purposes, or in a race or speed test, therefore, in keeping with the policy provisions, benefits are not payable as a covered loss did not occur.

We regret that we are unable to render a favorable determination on your claim. While we believe our position to be correct, we understand that you may disagree with our decision. Therefore, in accordance with the rules and regulations of the Employee Retirement Income Security Act, which govern this plan, you have the right to appeal our decision to deny this loss. You have the opportunity to submit written comments, documents, or other information in support of your appeal. You will have access to all relevant documents as defined by applicable U.S. Department of Labor regulations. Your appeal should provide in writing your reasons for disagreeing with our decision, and should include supplemental documentation that will have a bearing on our decision. Such documentation should provide evidence that the loss was an injury as defined by the policy, and was not excluded by the exclusion for a loss resulting from riding in or on, boarding, or getting off any conveyance used for tests or experimental purposes, or in a race or speed test. The appeal must be received by us within 60 days of the date you receive this letter.

A decision on appeal will be made not later than 60 days after we receive your written request for review of the initial determination. The review will take into account all new information, whether or not presented or available at the initial determination. If we determine that special circumstances require an extension of time for a decision on appeal, the review period may be extended by an additional 60 days (120 days in total). We will notify you in writing if an additional 60-day extension is needed.

In accordance with Section 502(a) of ERISA, you have the right to bring a civil action following an adverse benefit determination, but you must complete this appeal procedure before filing suit. If we do not receive your written appeal within 60 days of the date you receive this letter, our claim

Thomas Thomson
April 23, 2010
Page 3

determination will be final.  The policy under which Mr. Thomson was insured for this claim has a
provision which states, in part, that no lawsuit or legal action shall be brought to recover on the
policy after the expiration of three years from the time proof of loss is required.

Please direct your appeal to:

> Zurich American Insurance Company
> 58 South Service Road
> Melville, NY  11747

> Attn:   Karen Doyle
> ERISA Appeal Committee
> Specialties Division
> A&H Special Risk Claims

Zurich reserves the right to assert any and all claims and defenses that it may have, whether or
not expressly stated herein or in any other correspondence.

Very truly yours,

Karen Doyle
Senior Claims Specialist
A&H Special Risk Claims
Specialties Division

Zurich North America
Specialties
Group Accident, A&H Claims
58 South Service Rd Melville, NY 11747-2342
P.O. Box 9102 Plainview, NY 11803-9002
Telephone (631) 845-2200 Toll Free (866) 841-4771
AD&D Fax (631) 845-2235

# EXHIBIT
# "3"

**Law Offices of**
## PHILLIP G. KRUEGER
### and Mediation Services
2864 Sweetwater Avenue
Lake Havasu City, Arizona, 86406

Phillip G. Krueger,
Attorney/Mediator
email: pkrueger@citlink.net

(928) 855-6363
Fax (928) 855-6427
Toll Free 877-358-0701

Ann M. Costello,
Legal Asst/Mediator
email: acostello@citlink.net

June 10, 2010

VIA FAX & US MAIL
631-845-2523

Zurich American Insurance Company
58 South Service Road
Melville, NY 11747-2342
Attn: Karen Doyle, Senior Claims Specialist

Re:   Claim No:      742-0011188
      Claimant:      Steven Thomson
      Insured:       YRC Worldwide, Inc.
      Policy No:     GTU 0030578
      D/L:           1/9/10

Dear Ms. Doyle:

   I have been retained by Thomas Thomson relative to the claim on an accidental life insurance policy taken out on YRC Worldwide, Inc., as insured on the life of Steven Thomson. I have reviewed the correspondence your firm provided to Thomas and I find the explanation for denial of coverage somewhat lacking.

   In response to Thomas' letter of June 2, 2010, you responded by providing portions of the policy including "Section III-Definitions" and "Section IV-Coverages". In the "Definitions" section, you " * " several particular provisions which defined a covered accident, covered loss and bodily injury; none of which was particularly helpful in determining coverage. In the section for "Coverages", you marked several provisions which all were governed by air travel and aircraft hazard limitations and hazard exclusions. In fact, the accident involved in the decedent's death was a motorcycle. The "Aircraft" section is not applicable to the operation, riding of and operation of a motorcycle. Yet, the clear implication of your letter is that "any conveyance...used for...or in a race of speed test" is excluded as a hazard. However, there is no definition provided for the word "conveyance" and it would be very difficult for your company to show that the activity of racing a motorcycle was not a covered activity considering the language was provided by your company.

Zurich American Insurance Company
Karen Doyle
Page Two


   I urge you to review your denial of the claim.  The language cited does not lend itself to an analysis which would exclude coverage.  In the event the claim is still denied, I will refer Mr. Thomson to an appropriate certified specialist in insurance bad faith law.

    Respectfully,

    Phillip G. Krueger


PGK/amc
cc: client



```
TRANSMISSION VERIFICATION REPORT
```

```
                              TIME  : 06/14/2010 10:40
                              NAME  : KRUEGER LAW OFFICE
                              FAX   : 9288556427
                              TEL   : 9288556363
                              SER.# : BROL5J386958
```

```
DATE,TIME             06/14  10:39
FAX NO./NAME          16318452523
DURATION              00:00:33
PAGE(S)               02
RESULT                OK
MODE                  STANDARD
                      ECM
```

**Law Offices of**
# PHILLIP G. KRUEGER
## and Mediation Services
2864 Sweetwater Avenue
Lake Havasu City, Arizona, 86406

Phillip G. Krueger,
Attorney/Mediator
email: pkrueger@citlink.net

(928) 855-6363
Fax (928) 855-6427
Toll Free 877-358-0701

Ann M. Costello,
Legal Asst/Mediator
email: acostello@citlink.net

June 10, 2010

VIA FAX & US MAIL
631-845-2523

Zurich American Insurance Company
58 South Service Road
Melville, NY 11747-2342
Attn: Karen Doyle, Senior Claims Specialist

> Re:    Claim No:    742-0011188
>        Claimant:    Steven Thomson
>        Insured:     YRC Worldwide, Inc.
>        Policy No:   GTU 0030578
>        D/L:         1/9/10

Dear Ms. Doyle:

I have been retained by Thomas Thomson relative to the claim on an accidental life insurance policy taken out on YRC Worldwide, Inc., as insured on the life of Steven Thomson.  I

# EXHIBIT

# "4"



**ZURICH**

September 28, 2010

VIA FACSIMILE (928-855-6427)  AND REGULAR MAIL
Law Offices of Phillip Krueger
2864 Sweetwater Avenue
Lake Havasu City, AZ 86406

RE:
Claim No.:        **742-0011188YRC**
Policy Holder:    **YRC Worldwide, Inc.**
Insured:          **Thomas Thomson**
Policy No.:       **GTU 0030578**

Brian Baney
Director

Zurich N.A. - Specialties

PO Box 968041
Schuamburg, IL 60196-8041

Telephone 973-394-5813
Facsimile 866.255.2962

E-mail
brian.baney@zurichna.com

Dear Mr. Krueger:

The ERISA Review Committee ("Committee") has reviewed the above-
referenced appeal regarding the accidental death claim filed under a group
accident insurance policy issued to YRC Worldwide under the above referenced
policy number.

We have reviewed your June 10, 2010 appeal letter.   The Committee has
reconsidered Zurich's position concerning applicability of Exclusion 6 under
Section IV-Coverages.  After taking into account the points raised in your letter,
we have determined that we are withdrawing our denial based on this exclusion.
However, as set forth more fully below, the Committee has identified another
exclusion that is applicable to this claim.  Since an additional ground was found to
apply and not previously set forth by Zurich in the original April 23, 2010 letter,
you are afforded another 60 days to appeal this decision.

According the General Exclusions, "[a] loss will not be a Covered Loss if it is
caused by, contributed to, or results from . . . (6) parasailing, bungee jumping, or
any other extra-hazardous activity."  The term "extra-hazardous" is defined as
"especially or unusually dangerous."  *Black's Law Dictionary*, 624 (8th Ed. 2004).

There are court decisions in other contexts which support the conclusion that
motorcycle racing is extra-hazardous. For example, in *Hammer v. Road America,
Inc.*, 614 F. Supp. 467, 469 (E.D. Wis. 1985), the court stated that "[t]he risks and
hazards of racing are well known.  They are a source of the sport's appeal both to
racers and spectators.  The risks and hazards are consciously borne to attain some
other certain benefits, both tangible and intangible."  *See also Kellar v. Lloyd*, 180
Wis. 2d 162, 182 (Ct. App. 1993).

2

As you know, Mr. Thomson died as a result of motorcycle racing. The La Paz County Sheriff's report dated 1/9/10 stated that is appeared that Mr. Thomson hit a bank on the left side of the racetrack and fell into several large rocks and bushes, causing trauma to his head. It was noted that Mr. Thomson's helmet had a large amount of damage. The high rate of speed, objective risk of serious injury or death and the competitive element of a race qualify this activity as ultra hazardous in our opinion. As a result, it is our position that the exclusion set forth above applies and coverage is not afforded.

As advised in previous correspondence, the Policy was issued to an employer for the benefit of its employees, and, therefore, the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), governs claims under this Policy. As set forth above, since we have set forth a new and additional ground to deny this matter, you are afforded an additional 60 days in which to appeal our decision. If you wish to appeal this matter, please direct you appeal along with supporting documentation to my attention.

Sincerely,
Zurich American Insurance Company
By

Brian Baney
As a member and on behalf of the ERISA Review Committee

# EXHIBIT
# "5"

# THE SUTHERLAND LAW FIRM

722 E. BEALE STREET, KINGMAN, ARIZONA 86401
(928) 753-6000 ● FAX (928) 753-2200
e-mail:  sutherlandlaw@npgcable.com

Douglas D. Sutherland
Admitted in Arizona
Missouri
Kansas

November 29, 2010

Brian Baney
Zurich Life Insurance Company
PO Box 968041
Schaumburg, IL 60196-8041

**SENT VIA US MAIL & FAX**
**(866) 255-2962**

Re:   Claim #:          742-001118YRC
      Policy Holder:   YRC Worldwide, Inc.
      Insured:         Thomas Thomson
      Policy #:        GTU 0030578

Dear Mr. Baney:

I, along with Ed Moriarity and Brad Booke, of the law firm of Moriarity Badaruddin & Booke, represent the beneficiaries of Steve Thomson concerning an unfortunate accident in which Mr. Thomson lost his life in a motorcycle accident on January 9, 2010.   Mr. Steven Thomson and his son, Thomas, were participating in the Best of the Desert event held in Parker, Arizona.     Mr. Thomson had entered the event with his son as an amateur, not as a professional participant.   Based upon the information contained from a witness who came upon the incident, it appears that Mr. Thomson hit an unforeseen boulder and lost control as his vehicle landed in an unusual way on yet another boulder causing head trauma and ultimately the loss of his life.

Mr. Thomas Thomson on or about June 10, 2010 requested payout on the life insurance policy which Steven Thomson had with his employer YRC Worldwide, Inc., policy number GTU003057.  On April 22, 2010 Zurich denied Thomas' claim for the benefits of his Dad's life insurance policy.  Zurich gave the reason that the accident was not covered and was specifically excluded because of the following policy language:

"Coverage is not provided:

Unless we have previously consented in writing to the use, coverage is not provided for any loss, caused by, contributed to, resulting from riding in or on, boarding or getting off:

6. Any conveyance used for test or experimental purposes or in a race or speed test."

The above referenced hazard exclusion cited by Zurich, in particular, deals with aircraft and aviation or any conveyance used for test or experimental purposes or in a race or speed test. None of these exclusions apply to Mr. Thomson's accidental death. On June 10, 2010 attorney Phillip Kruger corresponded with Zurich and urged an appeal of Zurich's denial of the Thomson life insurance claim. In his June 2010 letter attorney Kruger specifically spelled out that the accident involved in the decedent's death was by motorcycle. Any exclusion for aircraft is not applicable to the operation of, riding on or using a motorcycle. Further, attorney Kruger emphasized that Zurich had no definition for the word "conveyance" under which it was using to exclude coverage for said claim, and therefore Zurich's denial was unfounded.

In response to attorney Kruger's letter, Zurich then withdrew its initial denial based upon the previously referenced exclusion and now asserts the following general exclusion:

"[a] loss will not be a Covered Loss if it is caused by, contributed to, or result from . . . (6) parasailing, bungee jumping, or any other extra-hazardous activity."

Zurich now contends that the operation of the motorcycle in an amateur off road event is an extra or ultra hazardous activity. Zurich's assertion is incorrect for several reasons.

No where in Zurich's policy is the operation of a motorcycle in any category defined as hazardous let alone extra-hazardous. The cases relied upon by Zurich specifically, *Hammer v. Road America Inc.*, 614 F. Supp. 467, 469 (E.D. Wis. 1985) do not support Zurich's denial and are not applicable to this Arizona case. In *Hammer* the Court concluded that a release signed by a professional motorcycle racer, a pre-requesite to participate in a racing event, was not against public policy and was therefore enforceable under Wisconsin law and barred the Plaintiff from maintaining a negligent case against the defendants responsible for the motorcycle race. The *Hammer* case deals specifically with whether or not a professional motorcycle racer who signs a specific release encountered an event that was contemplated within the release he signed. Under no application does the *Hammer* case stand for the proposition that

motorcycle racing and in particular an off road non-professional endurance event is an extra-hazardous activity.   In fact, the language from the *Hammer* court clearly indicates that the court believed that an accident which occurred in a professional motorcycle race is something that would fall within the ambient of a life insurance contract.   "One would like to see Mr. Hammer full compensated for his disabling injury.   Motorcycle racers like him would be better served in the future, however, by having adequate disability and life insurance contract in force. . ."  *Hammer*, 614 F. Supp. at 472.

Likewise, the case of *Keller v. Lloyd Sports Car Club of America*, 180 Wis. 2nd 162, 509 N.W. 2nd 87 (1993) also deals with a Plaintiff's execution of a liability release.   The *Keller* case dealt with an execution of a release by a volunteer worker at a race track in which the defendants attempted to preclude recovery for injuries sustained during the race.   The *Keller* court concluded that the exculpatory contracts signed by the volunteer member of a crew at a race track was not enforceable against the plaintiff who signed it.   The *Keller* case dealt entirely with a contract for release and liability and had nothing to do with whether or not a motorcycle race, or any other event for that matter was considered extra or ultra hazardous.

Arizona courts have consistently construed insurance policies in favor of finding coverage, particularly when the excluded activity is not specifically spelled out in the policy.   Beginning with <u>Darner Motor Sales v. Universal Underwriters Insurance Co</u>., 140 Ariz. 383, 682 P.2d 388 (1994), the Arizona Supreme Court has continuously held that insurance policies may not be interpreted so as to defeat the reasonable expectations of the insureds.   This policy was reiterated by the Supreme Court in 1994 in <u>Averitt v. Farmers Ins. Co.</u>, 177 Ariz. 531, 869 P.2d 505, and again in 2001 in <u>Philadelphia Indem. Ins. Co. v. Barrera</u>, 200 Ariz. 9, 21 P.3d 395.

Arizona has never considered the operation of a motorcycle on streets, in an off road event or even motorcycle racing to be extra or ultra hazardous. Arizona courts have indicated that ultra hazardousness is equivalent to abnormally dangerous in the content of strict liability cases.   The Arizona courts have followed the Restatement (2nd) of Torts §520 when considering whether an activity is abnormally dangerous or ultra hazardous.   Determining whether an activity is abnormally dangerous the following factors are to be considered:

> (a)    Existence of a high degree of risk of some harm to the person, land or chattels of others;

> (b)    Likelihood that the harm that results from it will be great;

      (c)     Inability to eliminate the risk by exercise of reasonable care;

      (d)     Extent to which the activity is not a matter of common usage;

      (e)     Inappropriateness of the activity to the place where it is carried on; and

      (f)     Extent to which its value to the community is outweighed by its dangerous attributes.

*See Davis v. Cessna Aircraft Corp.* 168 Ariz. 301, 812 P.2d 1119 (Ariz. App. 1991).

Under the Arizona standard for abnormally or extra hazardous activity the event that Mr. Thomas was participating in does not even come close to qualifying as an abnormally dangerous activity. As set forth below individuals ranging in age from 12 to 92 participated in the Best of the Desert event. Despite having several races each year for over thirty years there has been only three fatalities in these events. Thousands of individuals participate in the Best of the Desert events or events similar to them each year. Under the Arizona analysis the activity that Mr. Thomson and his son were involved in could not ever be considered abnormally dangerous.

The Pennsylvania Supreme Court has concluded that stock car racing is not considered ultra hazardous activity. *See Blake v. Fried*, 173 Pa Sup. Ct. 27, 37 (1953).

Mr. Casey Folks is the director of operations for Best of the Desert event. Mr. Folks will testify that in the thirty years he has been involved with Best of the Desert event series, there have only been three fatalities. Mr. Folks will also testify that the event that Mr. Thomas was participating in was that of an amateur status. Mr. Folks will testify that individuals as old as 92 years old were participating in the Best of the Desert event and children as young as 12 and 13 were also participating in the same event Mr. Thomson was riding in. An event which encourages individuals in age range from 12 years old to 92 cannot under any circumstances be considered ultra or extra-hazardous.

**NOTICE OF APPEAL SHOULD BE GRANTED AND PAYMENT MADE IN FULL:**

The claimants, beneficiaries of Steve Thomson, on June 10, 2010 by letter from attorney Phillip Kruger, appealed Zurich's initial denial of the Thomson life insurance claim. The denial of the claim was not made in good faith. It is quite

obvious Zurich simply speed read the policy and made up an inapplicable basis for denial. The denial of the claim was not based upon sound reasoning and said denial was contrary to the policy. The denial by Zurich was simply an attempt to refuse the claim and hope it would not be contested. This shallow handling of the denial illustrates the practice of filing unjustified denials that will result in abandonment of the claim, or at the very least deferment of the payment of a lawful claim to a later date when a less than full claim payment may be negotiated.

When Zurich received the June 10, 2010 appeal they had to acknowledge they did not have a good faith basis for denial of the claim. Zurich then switched gears and said while we were wrong in denying the claim for the reasons stated, but we think we have new grounds and sent a second denial, without any justification or good faith basis stated, and demanded the claimants accept the denial or in the alternative file another appeal. They again attempt to deny the claim, hope it will go away, or attempt to get benefit based on deferred, reduced payment of the claim. The substance of the above letter shows where the second denial is in bad faith. The herein requested second appeal should be granted and full benefits paid. This is the second blatant bad faith attempt to avoid payment of a valid claim.

**DEMAND FOR PAYMENT:**

For the foregoing reasons and on behalf of the Thomson family and beneficiaries, we respectfully request that Zurich pay the claim in full to Mr. Thomson's beneficiaries before the end of 2010.  Steven Thompson died on January 9, 2010. Mr. Thomas Thomson requested payout on the life insurance policy which Steven Thomson had with his employer YRC Worldwide, Inc., policy number GTU003057.  On April 22, 2010 Zurich denied Thomas' claim for the benefits of his Dad's life insurance policy. Zurich gave the a bad faith reason that the accident was not an insured event, and, when a appeal was filed showing Zurich was wrong, Zurich then contrived a second bad faith, unjustified reason for denying the claim. Now, almost a year after the death of Steven Thompson, and after it is clear there is no good faith basis to deny the claim, Zurich delays payment on a lawful valid claim.

The present status is that there is a valid claim. The claim is payable in full.  Actionable bad faith claims can be made under the law. If Zurich pays the claim before year end, we will accept the amount of the benefits set forth in the policy. If the claim is not paid by year end, then bad faith actions may be commenced.  It is in everyone's best interest to get this matter resolved as soon as possible.  The claimants want to move on and not have this struggle prolong their grief.

Brian Baney
Zurich Life Ins. Co.
November 29, 2010
Page 6 of 6

You may contact Brad Booke or myself to further discuss this claim.   We look forward to hearing from you.

Sincerely,

DOUGLAS D. SUTHERLAND
For the Firm

DDS/lds


cc:    Brad Booke
       Moriarity Badaruddin & Booke
       10161 Park Run Drive #150
       Las Vegas, NV 89145
       (702) 947-7000

# EXHIBIT "6"

1/5/11
forwarded to Booke

**The Sutherland Law Firm**

| | |
|---|---|
| **From:** | "Bachrach, Joshua" <Joshua.Bachrach@wilsonelser.com> |
| **To:** | <sutherlandlaw@npgcable.com> |
| **Sent:** | Wednesday, January 05, 2011 1:51 PM |
| **Subject:** | Thomas Thomson (Zurich) |

I was asked by Zurich to write to you in response to the statement in your letter dated November 29, 2010, that you were requesting a decision on the appeal by the end of 2010. Please be advised that under the ERISA guidelines, Zurich has 60 days from its receipt of the appeal to make a decision. That time has not run. Zurich will respond to your client's appeal in the near future and in accordance with ERISA.

Should you have any questions or wish to discuss this matter, please fee free to contact me.

Joshua Bachrach
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
Independence Sq. West - The Curtis Center - Suite 1130 East
Philadelphia, PA 19106-3308
215-606-3906 (Direct)
215-627-6900 (Main)
215-627-2665 (Fax)
joshua.bachrach@wilsonelser.com

This communication was not intended or written to be used, and it cannot be used by any taxpayer, for the purpose of avoiding tax penalties. (The foregoing legend has been affixed pursuant to U.S. Treasury Regulations governing tax practice.)

*************************************************************

CONFIDENTIALITY NOTICE: This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system.

For further information about Wilson, Elser, Moskowitz, Edelman & Dicker LLP, please see our website at www.wilsonelser.com or refer to any of our offices. Thank you.

# EXHIBIT

# "7"

**From:** Brad Booke <brad@mbblawfirm.com>
**Date:** Tue, 1 Feb 2011 17:26:03 -0800
**To:** "joshua.bachrach@wilsonelser.com"
<joshua.bachrach@wilsonelser.com>
**Cc:** The Sutherland Law Firm <sutherlandlaw@npgcable.com>, Ed
Moriarity <ed@mbblawfirm.com>
**Subject:** Thomson v. Zurich

Mr. Bachrach:

I left you a voice mail today concerning the above-referenced matter.

On November 29, 2010, we sent the attached letter to the Zurich Life
Insurance Company appealing its denial of life insurance benefits to Mr.
Thomson's beneficiaries.  On January 5, 2011, you responded to an inquiry
from our co-counsel, Doug Sutherland, indicating that Zurich would give
notice of its decision by January 29, 2011.  That date has come and gone.

As I'm sure you are aware, we intend to file suit for money damages if
Zurich refuses to pay all sums due under the life insurance contract.  Please
advise, by return email on or before February 4, 2011 at 5 PM Mountain
time, Zurich's decision on the appeal.

_____
Bradley L. Booke
Moriarity Badaruddin & Booke
10161 Park Run Drive #150
Las Vegas, Nevada 89145
702-947-7000
702-932-8025 Fax
866-297-4863 Direct fax

**Subject:** FW: Out of Office AutoReply: Thomson v. Zurich
**Date:** Tuesday, February 8, 2011 11:52:03 AM MT
**From:** Brad Booke
**To:** Minot Maser

This was Zurich's counsel's only reply.

BLB

**From:** "Bachrach, Joshua" <Joshua.Bachrach@wilsonelser.com>
**Date:** Tue, 1 Feb 2011 17:24:12 -0800
**To:** Brad Booke <brad@mbblawfirm.com>
**Subject:** Out of Office AutoReply: Thomson v. Zurich

I will be out of the office on January 31 and February 1. While I am out I will have limited access to e mails and phone messages. I will return all calls and messages as soon as possible. If you need immediate assistance during business hours, please dial 215 627-6900 and ask for my assistant, Denise Richards. Thank you.

This communication was not intended or written to be used, and it cannot be used by any taxpayer, for the purpose of avoiding tax penalties. (The foregoing legend has been affixed pursuant to U.S. Treasury Regulations governing tax practice.)

**********************************************************

CONFIDENTIALITY NOTICE: This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system.

For further information about Wilson, Elser, Moskowitz, Edelman & Dicker LLP, please see our website at www.wilsonelser.com or refer to any of our offices. Thank you.

# EXHIBIT
## "8"



**ZURICH**

February 28, 2011

RECEI___ MAR 0 2 ___

*Via Certified Mail – Return Receipt Requested*

Douglas D. Sutherland, Esq.
The Sutherland Law Firm
722 East Beale Street
Kinman, Arizona 86401

Vincent Biancamano
Vice President

Zurich North America
Non-Standard Lines

RE:   Claim Number:        742-001118YRC
      Insured:             Thomas Thomson
      Policyholder:        YRC Worldwide Inc.
      Policy Number:       GTU 0030578

Dear Mr. Sutherland:

      The ERISA Committee has reviewed the above referenced appeal and subsequent appeal regarding the accidental death claim filed under a group accident insurance policy issued to YRC Worldwide under the above referenced policy. Based on the review of the file contents and the facts and law recited in your appeal letter we feel there is a significant factual issue as to whether Mr. Thomson's death was an accident as defined under the terms of the policy and have remanded this matter back to the claim department to commence negotiations with your office.

One Liberty Plaza
165 Broadway
New York, New York 10006

Telephone (212) 553-5543
Fax (212) 225-7037

E-Mail
vincent.biancamano@zurichna.com

      Please contact Peg Fahey at (973) 394-5856 to discuss this claim.

      As advised in previous correspondence, the Policy was issued to an employer for the benefit of its employees, and, therefore, claims under this Policy are governed by the Employee Retirement Income Security Act of 1974, as amended (ERISA). As the result, you have the right to bring an action under Section 502(a) of ERISA.

Sincerely,

Zurich North America

*[signature]*

Vincent Biancamano
As a member and on behalf of the ERISA Review Committee